UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT | * | CIVIL ACTION |
| OPPORTUNITY COMMISSION | * | |
| | * | NO. 10-3322 |
| Plaintiff, | * | |
| vs. | * | SECTION B |
| | * | |
| | * | MAGISTRATE 2 |
| RESOURCES FOR HUMAN | * | |
| DEVELOPMENT, INC. D/B/A | * | |
| FAMILY HOUSE OF LOUISIANA | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, Resources for Human Development, Inc. d/b/a Family House of Louisiana

("RHD," "Family House" or "Defendant"), moves this Court to dismiss the claims of Plaintiff, the

U.S. Equal Employment Opportunity Commission ("Plaintiff" or "EEOC"), because Plaintiff's claim

of obesity-based disability discrimination, filed on behalf of Lisa Harrison, fails as a matter of law.

## I. FACTS

RHD is a Pennsylvania non-profit corporation which operates more than 160 different social

service and support programs in Pennsylvania and twelve other states throughout the country,

including Louisiana.  In most cases, these programs operate as discrete units (unincorporated divisions) within the company.  The unincorporated unit where Lisa Harrison was employed is Family House Louisiana, a long-term residential treatment facility for chemically dependent women and their children, located in Terrytown, Louisiana.  Lisa Harrison was hired by Family House Louisiana on November 23, 1999 as a Prevention/Intervention Specialist, to work with the pre-school age children of the women in treatment.  Upon information and belief, Ms. Harrison weighed over 400 pounds at the time she was hired.  She remained employed at Family House for almost eight years until September 6, 2007, when she was terminated for performance-related issues.  She subsequently filed a charge of discrimination alleging that she was regarded as disabled on the basis of her obesity.  (Exh. "A")  She denied having any actual disability. *Id.*  Nor did she ever ask RHD for any accommodation for any alleged disability.  (Exh. "B" #9, p.8; Exh. "D")

While the charge was still pending, on November 1, 2009, Ms. Harrison died at age 48, of obesity related issues.  Upon information and belief, she weighed approximately 540 pounds at the time of her termination in 2007, and 441 pounds in 2008, a year prior to her early death.

In 2010, the EEOC filed this lawsuit against RHD alleging that it had discriminated against Ms. Harrison on the basis of her obesity.  The Complaint states that Ms. Harrison was regarded as disabled by RHD, a claim that necessarily means she was not actually disabled, and RHD was wrong to think so.[1]  However, the Complaint also suggests that the EEOC may be alleging that Ms.

---

[1] It is well-settled that a person cannot be both actually disabled and regarded as disabled.  The definitions of "actually disabled" and "regarded as disabled" are mutually exclusive and inconsistent. *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1091-1092, n. 2 (8th Cir. 2007).  For purposes of the ADA, the definition of "'regarded as disabled' assumes that the individual is not actually disabled." *Id.* at 1092, n. 2 (citing *Wenzel v. Mo-Am. Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005).  *See also Jelsma v. City of Sioux Falls*, 744 F. Supp. 2d 997 (S.D. SD 2010) (noting that "regarded as" disabled is mutually exclusive from being actually disabled) (citations omitted); *Cooper v. AT&T Corp./Lucent Technology*, 1998 WL 1784223, *4 n. 68 (W.D. Tex. 1998) ("The Court notes the factual inconsistency in [Plaintiff]'s claims.  On the one hand, [Plaintiff] claims she is a disabled qualified individual (having a substantially limiting impairment) entitled to reasonable accommodations and on the other hand she claims that [her employer] erroneously perceived her as having a substantially limiting impairment").

Harrison had an actual disability, i.e. that her obesity caused her a substantial limitation in a major life activity.[2]

## II. LAW AND ARGUMENT

RHD shows below that while the EEOC should be required to clearly state their legal claims and the basis therefor, (the subject of a pending Motion to Compel), particularly since Ms. Harrison is deceased and cannot answer any of RHD's questions,  it actually does not matter in the instant

---

[2] Efforts to obtain clarification of the government's actual claim(s) have been frustratingly unavailing, and are the subject of a pending Motion to Compel. For example, in very carefully drafted discovery requests, RHD sought clarification of the claims, information it can only get from the EEOC because Ms. Harrison is deceased. The EEOC objected to almost all the discovery requests on grounds of prematurity, the work product and "deliberative process doctrine" privileges, and the compound nature of the question. When they did provide responses, they were downright Kafka-esque: convoluted, evasive, and contradictory, attempting to turn the table on Defendant, taking a wait and see approach to see how Defendant will respond to its discovery requests and how the evidence will develop before committing to a cause of action.

For instance, Interrogatory No. 7, which straightforwardly seeks to determine what ADA claim EEOC is really presenting, asked: "Do you claim Lisa Harrison was actually disabled? If so, please state: (1) what impairment(s) Lisa Harrison had; (2) what major life activity was substantially limited by that or those impairment(s), and (3) for every major life activity you claim Lisa Harrison was substantially limited in performing because of the impairment(s) identified in Interrogatory 7(1) above, please state whether Lisa Harrison was unable to perform the major life activity or was significantly restricted in performing the major life activity, and, if you answer, significantly restricted, please explain how." After objecting as outlined above, the EEOC went on to state that notwithstanding its objections, it *does* contend that Ms. Harrison was a person with a disability within the meaning of the ADA, and that Defendant's statements and admissions, as well as the evidence contained in the Administrative Charge File and the evidence adduced thus far "may permit a reasonable person to conclude" that "Ms. Harrison was, by virtue of her weight, substantially limited, *inter alia*, in walking, standing, bending, being mobile, and working."

The EEOC then supplemented some of its discovery responses, including Interrogatory No. 7.  With no support, it stated that "[t]here is no requirement, in discovery, that a party predetermine, or disclose, the legal theories of its case.... A plaintiff may pursue an 'actual disability' theory, a 'regarded as' theory, and a 'record of' theory, simultaneously or in the alternative." Strangely, the EEOC then asked Defendant to stipulate that Ms. Harrison was disabled within the meaning of the ADA and again stated that "the evidence adduced thus far, as well as that which may be developed during this litigation, may permit a reasonable factfinder to conclude that at the time of her termination, Ms. Harrison had one or more impairments which substantially limited one or more major life activity." Numerous other answers are equally vague. (Exhs. "B" and "C")  See also, fn. 5.

When asked for details as to its claim that Ms. Harrison was regarded as disabled by anyone at RHD in Interrogatory No. 10, the EEOC objected on the same grounds, and simply referred Defendant to the Administrative Charge File and to Defendant's position statement to the EEOC. "All of the details requested by Defendant in this interrogatory . . . can be discerned from Defendant's own statements, and the statements of its witnesses. . . . Defendant can identify those facts as

situation.  Plaintiff cannot prevail under either an "actually disabled" theory nor a "regarded as" disabled theory.  Despite having considered this matter for three years prior to filing suit, the EEOC's claims in this case not only go beyond the legitimate reaches of the Americans with Disabilities Act ("ADA"), they run head long into controlling precedent from the United States Supreme Court, numerous courts of appeal, and dozens of district courts, as well as the EEOC's own guidelines.

First, fatal as to any actually disabled theory is the fact that plaintiff wholly failed to exhaust administrative remedies on such a claim.  The EEOC seeks to present to a jury a claim of disability discrimination on behalf of an individual who failed to bring any charge relating to a claim that she was "actually disabled," who admits that she had no physical or mental impairments as those terms are defined by the ADA, and whose charge investigation never even touched on, much less exhausted any claim that she was actually disabled.

Second, the EEOC fatally fails to claim there was any physiological basis for her obesity, nor that anyone at RHD believed such a physiological basis existed.  As a matter of law, without pleading and proving that a) there was a physiological basis for her obesity, or b) RHD perceived of Ms. Harrison's obesity as having a physiological basis, Ms. Harrison does not have an "impairment" within the meaning of the ADA and thus is not entitled to its protections on either an actually disabled or a regarded as disabled claim. Plaintiff's claim instead relies solely on the fact that Ms. Harrison simply possessed the physical characteristic of being obese.  However, the ADA does not extend to physical characteristics, and to construe it to do so debases the high purposes of the Act.

---

easily as can the EEOC." *Id.*

For these reasons, Plaintiff's claim should be dismissed.

## A. PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ON ANY CLAIM THAT LISA HARRISON IS "ACTUALLY DISABLED."

It is well-settled that before a plaintiff can bring an action under the ADA, she must first exhaust her administrative remedies. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir.1996)). *See also* 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378-79 (5th Cir.2002); *Reed v. Northrop Grumman Ship Sys. Inc.,* No. 04-1214, 2004 WL 2115596, at *1 (E.D. La. Sept. 17, 2004) (Vance, J.). Like Title VII, the ADA's exhaustion requirement is satisfied only if a plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice. *Taylor*, 296 F.3d at 378-79 *citing Dao, supra.* The Fifth Circuit has held that courts have no jurisdiction to consider Title VII or ADA claims as to which the aggrieved party has not exhausted administrative remedies. *See Nat'l Ass'n v. City of Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994). The purpose of this requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation. *Skinner v. Touro Infirmary*, No. 02-2693, 2004 WL 2578924, at *2 (E.D. La. Nov. 10, 2004). Failure to comply with this requirement will result in dismissal of the plaintiff's claim. *Reed*, 2004 WL 2115596 at *2; *Sawyer v. JRL Enterprises, Inc.*, No. 05-1685, 2005 WL 3543738, at *2 (E.D. La. Oct. 5, 2005) (Vance, J.).

It is beyond question that Ms. Harrison's charge of discrimination included on a "regarded as disabled" claim on the basis of her obesity. In the Charge itself, she specifically denied having any actual disability:

> I believe that I was discriminated against in violation of the Americans with Disabilities Act, in that I was regarded as having a disability. I worked for this company for eight years and at no time during my employment has my weight caused

me difficulty nor stopped me from performing my job.  I have never had a write-up or supervision concerning this matter.  (Exh. "A")

In addition, she specifically denied having any disability in her EEOC Intake Questionnaire. (Exh. "D")  Nor did the scope of the investigation extend to any actually disabled claim:  RHD was not asked to address a claim of actual disability in its Position Statement, nor did it do so.  In fact, RHD confirmed that Ms. Harrison's claim was only that she was "regarded as" disabled in its 2007 Position Statement:

> While the Charge of Discrimination indicates discrimination based on "Disability," **it is apparent from Ms. Harrison's statement of particulars that she is not claiming that she is actually disabled.  In fact, she denies any disability or incapacity to do her job (she states in the Charge of Discrimination, "at no time during my employment has my weight caused me difficulty nor stopped me from performing my job").  Rather, she states her belief that she was discriminated against in that she was "regarded as" having a disability.**
> ***
> **As Ms. Harrison has not claimed that she is actually physically disabled, RHD has not presented any arguments to the contrary.**  For the record, however, RHD denies that Ms. Harrison suffers from a physical disability as the result of her obesity.  As noted below, RHD acknowledges that Ms. Harrison's obesity affected her performance, but denies that it substantially limited her in any major life activity.  **RHD responds in this Answer and Position Statement only to Ms. Harrison's claim that she falls within the statute because she was "regarded as" disabled by RHD.**

(Exh. "E" p. 4, emphasis added)

Nor did EEOC follow up on any alleged claim of actual disability in the investigation it continued to conduct, including posing numerous questions to RHD, none of which related to an actual disability.  (Exh. "F")

Finally, in its Cause Determination, the EEOC was wholly silent as to any alleged actual disability:  "The Charging Party alleges she was terminated from her employment because the

6

Respondent regarded her as disable." (*sic*)(Exh. "G")

A claim based on actual disability was held not reasonably related to a claim for a perceived disability for exhaustion purposes in *Marz v. Presbyterian Homes & Servs.*, 2011 U.S. Dist. LEXIS 78712, * 23, n. 5 (D. Mn. 2011).  See also *Cadely v. New York City Dept. of Transp.*, No. 04-8196, 2008 U.S. Dist. LEXIS 15176, 2008 WL 465199, *10 (S.D.N.Y. Feb. 13, 2008) (dismissing complaint that plaintiff was regarded as disabled where EEOC charge only alleged plaintiff was actually disabled); *Kear v. Bd. of County Comm'rs of Sedgwick County, Kan.*, 491 F. Supp. 2d 1052, 1055-56 (D. Kan. 2007) (holding plaintiff failed to exhaust "regarded as" and "record of" claim where EEOC charge stated only that "I am disabled").

The scope of a lawsuit is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the EEOC claim.  *Randel v. U.S. Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998).  Clearly, a claim based on actual disability DID NOT grow out of Ms. Harrison's charge that she was "regarded as" disabled.  The issue has not been presented to the employer, not investigated, and not considered for conciliation.  As such, the EEOC is precluded from raising any claim of "actual disability" in this lawsuit.

## B. IN THE ALTERNATIVE, EVEN SHOULD AN ACTUAL DISABILITY CLAIM BE ALLOWED TO PROCEED, AS A MATTER OF LAW, OBESITY IS NOT AN IMPAIRMENT UNLESS IT HAS A PHYSIOLOGICAL BASIS.  EEOC HAS FAILED TO PLEAD A PHYSIOLOGICAL BASIS AND THUS HAS FAILED TO STATE A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION.

The ADA provides in pertinent part that disability includes:  (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;  (B) a record of such an impairment;  or  (C) being regarded as having such an impairment.  42 U.S.C. §

12102(2).  In order to prove that Lisa Harrison is either actually disabled or regarded as disabled

under the ADA, the EEOC must be able to show that she either had or was perceived to have an

impairment as defined by the Act and implementing regulations.  29 C.F.R. § 1630.2(l); EEOC

Compliance Manual, Section 902.

> A physical or mental impairment is defined as (1) any physiological disorder, or
> condition, cosmetic disfigurement, or anatomical loss affecting one or more of the
> following body systems:  neurological, musculoskeletal, special sense organs,
> respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-
> urinary, hemic and lymphatic, skin, and endocrine; or (2) any mental or psychological
> disorder, such as mental retardation, organic brain syndrome, emotional or mental
> illness, and specific learning disabilities.  29 C.F.R. § 1630.2(h).

The ADA itself thus did not address obesity.  It was left to the EEOC to provide regulations

and guidance as to how employers were to interpret and apply the ADA.

### 1. The EEOC's own regulations have all but excluded obesity from qualifying as a disability.

According to the EEOC's own Interpretive Guidance for the ADA, set forth in an Appendix

to the regulations, when determining whether an employee has a mental or physical impairment, it is

important to distinguish between conditions that are impairments and physical, psychological,

environmental, cultural and economic characteristics that are not impairments. The definition of the

term "impairment" does not include physical characteristics such as eye color, hair color, left-

handedness, or height, weight or muscle tone that are within "normal" range **and are not the result**

**of a physiological disorder**.  29 C.F.R. § 1630.2(h)(emphasis added).

The EEOC's own Interpretive Guidance for the ADA, set forth in an Appendix to its

Regulations, flatly states that obesity is "rarely" to be considered a disabling impairment:

[T]emporary, non-chronic impairments of short duration, with little or no long term or

permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza. ***Similarly, except in rare circumstances, obesity is not considered a disabling impairment***.

29 C.F.R. Pt. 1630, App., § 1630.2(j) [emphasis added].

Unfortunately, the EEOC did not address what these "rare circumstances" would be. The result has been almost twenty years of confusion at the district court level, at the appellate level, and certainly in the HR departments of American employers. As one court of appeal grappling with the issues criticized, shortly after the ADA was passed: "Neither Title II of the Americans With Disabilities Act, ... nor § 504 of the Rehabilitation Act of 1974, ..., define "physical or mental impairment" or "major life activity," instead leaving that task to the applicable regulations. **These regulations, in turn, provide little additional guidance.**" Compounding the problem, the Fourth Circuit notes, was that the only direct authority on the obesity question "is a provision in the "interpretative guidance" appendix to EEOC regulations promulgated pursuant to Title I of the ADA. **Although of nominal interpretative value, that provision states that "except in rare circumstances, obesity is *not* considered a disabling impairment."** 29 C.F.R. § 1630 App. § 1630(2)(j). *Torcasio v. Murray,* 57 F.3d 1340, 1354 (4th Cir. 1995)(emphasis added).

As demonstrated in detail below, since that decision in 1995, numerous courts have been presented with the issue of alleged obesity discrimination under the ADA, and have overwhelmingly held that that the "rare circumstances" referenced by the EEOC exist only when there is a physiological basis for the obesity, consistent with 29 C.F.R. § 1630.2(h). Only then, will obesity be considered a covered impairment.

In many cases brought under the ADA, the question whether the plaintiff is impaired

is not litigated and the question turns on whether the impairment constitutes a disability. But in numerous court cases involving obesity, the question of impairment is often the main issue. **Courts have interpreted these guidelines to mean that in order to be an impairment, obesity must affect a bodily system and result from a physiological disorder that can be identified. …Accordingly obesity is usually not seen as falling within the definition of an impairment and therefore it cannot be a disability.**

Jane Korn, *Too Fat,* Virginia Journal of Social Policy & the Law (Vol. 17:2, Winter 2010) pp. 231-232 (emphasis added). As was noted as early as 1994, is often cited, and is still the case: **"The case law and the regulations both point unrelentingly to the conclusion that a claim based on obesity is not likely to succeed under the ADA."** *Smaw v. Virginia Dep't of State Police,* 862 F.Supp. 1469, 1475 (E.D.Va.1994)(emphasis added).

It is thus particularly vexing that the EEOC is stretching so far to try to make a claim for disability discrimination in this, and other obesity-based cases. The EEOC faults RHD for reasonably believing that Ms. Harrison was not a qualified individual within the scope of the ADA based on her obesity, seeking not only a finding of liability against RHD, but seeking maximum punitive damages. Yet it was the EEOC's treatment of obesity as a special case that led to the law precluding a cause of action except by those obese plaintiffs able to prove a physiological cause for their obesity. It was the EEOC that carved out a special niche for obesity in the first place, establishing a status, the requirements of which almost no employee can meet. "The courts' inability to view obesity as a disability may be based, in large part, on the EEOC regulations…" *Too Fat, supra,* at 234.

Much effort has been made trying to discern why the EEOC treated obesity differently. Some cases have pointed to its prevalence: **"The policy rationale behind this is that to permit physical**

**characteristics, like obesity, to be treated as an impairment "would distort the concept of an impairment which implies a characteristic that is not commonplace and would thereby debase the high purpose of the statutory protections available to the truly handicapped."** *Andrews v. Ohio,* 104 F.3d 803, 810 (6th Cir. Ohio 1997), cited in *EEOC v. Watkins Motor Lines* 463 F.3d 436 (6th Cir. Ohio 2006). See also, *Too Fat, supra.*[3]  Some scholars have speculated that the EEOC may have been motivated by the mutability of the condition (weight fluctuates), or the "voluntariness" of the condition (overeating is a choice). Jane Korn, *Fat,* 77 B.U. L. Rev. 25, 55 (1997); *Too Fat, supra* at 235.

For the employer, and for this Court, it matters not what motivated this carve out for obesity; the law requires a physiological basis exist for an obesity claim to meet the first requirement of an ADA analysis, a covered impairment. The law further requires that the employer perceive of a physiological basis for the obesity in order for the plaintiff to state a prima facie case of "regarded as discrimination." The EEOC has done neither. Lisa Harrison's EEOC charge was filed in October, 2007. The EEOC has had from 2007 to present to develop her medical information and indeed has done so. During that time, apparently without any proof of a physiological basis for the obesity or even any analysis of whether one existed, the EEOC not only rendered a "cause determination," finding RHD regarded Ms. Harrison as disabled, but chose to itself sue RHD, a non-profit which can ill afford to defend a frivolous matter like this. (Exh. "G")

---

[3] "Obesity is so common, however, that it might have fallen into the problem confronted by the plaintiffs in *Sutton v. United Airlines,* 527 U.S. 471, 475 (1999). In *Sutton,* one of the reasons the Court held that wearing eyeglasses was not a disability was because the ADA contemplated 43 million disabled Americans while over 100 million Americans have some form of vision impairment." *Too Fat,* p. 214, fn 28. … "To put the numbers a different way, almost one-third of Americans are obese. And to put it into a still slightly different lens, if the current rate of obesity continues, seventy-five percent of Americans will be overweight and forty-one percent will be obese in 2015." *Too Fat, supra,* at 215.

2. **The law requires a physiological basis in order to claim that obesity is an impairment within the definition and the protections of the ADA.**

In addition to failing to exhaust administrative remedies on its actual disability claim, the EEOC has fatally failed to plead any physiological basis for Ms. Harrison's obesity, a required element in almost every court that has considered the matter. The Fifth Circuit has not addressed the issue, but as shown below, a number of other federal circuit courts have, including the United States Second, Third, Fourth, Sixth and Tenth Circuits. All have held that there must be a physiological basis for the obesity. In particular, the Sixth Circuit's 2007 decision in *EEOC v. Watkins Motor Lines* 463 F.3d 436 (6th Cir. 2006) is instructive and has guided many subsequent decisions on this issue. It is also particularly relevant because in *Watkins*, as here, the plaintiff was the EEOC trying vainly to bring obesity within the protections of the ADA despite what the EEOC itself included in its regulations and Interpretive Guidance. It failed in *Watkins*, as it should fail here.

In *EEOC v. Watkins Motor Lines, Inc.*, the district court had held that morbid obesity may be an ADA impairment "where it has a physiological cause," but held that non-physiological morbid obesity is not an "impairment" under the ADA. The Sixth Circuit agreed and rejected the EEOC's attempt to claim that morbid obesity constituted an impairment without the showing of its being caused by a physiological disorder.

> In *Andrews*, we repeatedly emphasized that a physical characteristic must relate to a physiological disorder in order to qualify as an ADA impairment. …**We observed that "physical characteristics that are '*not the result of a physiological disorder*' are not considered 'impairments' for the purposes of determining either actual or perceived disability."**
> …
> **The Second Circuit has interpreted *Andrews* and has also found that we held that an abnormal physical characteristic must be related to a physiological cause to be an ADA impairment.** See *Francis v. City of Meriden*, 129 F.3d 281, 286

(2d 1997) ("[a]greeing" with our holding in *Andrews* and finding that the plaintiff-firefighter's claim that he was disciplined because his weight did not meet a union standard failed because "obesity, *except in special cases where the obesity relates to a physiological disorder,* is not a 'physical impairment' within the meaning of the statutes")

...

**Thus, <u>consistent with the EEOC's own definition</u>, we hold that to constitute an ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition.**

*Id.* at 442-443 (Emphasis added).

The Second Circuit's decision in *Francis v. City of Meriden,* 129 F.3d 281, 286 (2d Cir. 1997), has also been frequently relied upon in concluding that obesity must result from a physiological disorder to be considered an impairment. There, too, the plaintiff's "claim fail[ed] because obesity, except in special cases where the obesity relates to a **physiological** disorder, is not a 'physical impairment' within the meaning of the statutes." *Id.*

> **Accordingly, we agree with the holding in *Andrews* that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability."** 104 F.3d at 808 (emphasis added)(quoting 29 C.F.R. § 1630.2(h)).... Generally, weight is not such an impairment. The EEOC, in its interpretive regulations to the ADA, explains that "the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight or muscle tone that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. § 1630.2(h)(emphasis added).

*Andrews v. Ohio*, 104 F.3d 803, 808 (6th Cir. Ohio 1997), referred to in *Watkins, Francis,* and numerous other decisions, confirms the Sixth Circuit's consistent position on this issue:

**"[P]hysical characteristics that are "not the result of a physiological disorder" are not considered "impairments" for the purposes of determining <u>either actual or perceived disability</u>." (Emphasis added).**

The Tenth Circuit is also in agreement. *Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir.

13

2010):

> **In analyzing whether something is a disability the court looks to whether it is a "physiological disorder or condition affecting one or more body systems, or any mental or psychological disorder."** *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 603 (11th Cir. 2008) (citing 29 C.F.R. § 1630.2(h)(1), (2))(emphasis added).

Without addressing the basis of the obesity, the Third Circuit rejected that a cause of action lies "against an employer who discriminates against an employee because it perceives the employee as disabled by obesity." *Walton v. Mental Health Ass'n*, 168 F.3d 661 (3d Cir. Pa. 1999). *See also, Torcasio v. Murray*, 57 F.3d 1340, 1354 (4th Cir.1995).

As in the appellate courts, the requirement for a physiological basis in the district courts started very early on, and the trend has continued and evolved. Numerous district courts have held similarly in a long line of similar cases spanning over 15 years. Here is but a sampling:

*Spiegel v. Schulmann*, 2006 U.S. Dist. LEXIS 86531, 36–41 (E.D.N.Y. 2006), on appeal 604 F.3d 72 (2d Cir. 2010) (reversed and remanded on other grounds):
> **Obesity alone is not a physical impairment unless it results from a physiological disorder of the sort described in 29 C.F.R. § 1630.2(h)(1).** (Emphasis added).

*Middleton v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 24977, p. 6 (N.D. Fla. 2008):

> **Obesity, even morbid obesity, however, does not constitute a physical impairment unless it is the result of a physiological disorder or condition. . . .** In addition, to constitute a physical impairment a person's obesity must also affect one of the body systems listed in § 1630.2(h)(1). . . . **Limiting the ADA's protections in these ways is necessary to conform to the plain language of § 1630.2(h)(1) which requires that a physical impairment be a "physiological disorder, or condition" which affects a listed body system. These limitations are also necessary to prevent a dilution of the ADA.** (Emphasis added).

> <u>Footnote 6</u>: The court declines Middleton's invitation to find that any individual who is "morbidly obese" has a physical impairment regardless of whether the individual's obesity is the result of a physiological disorder or condition. **Expanding the definition of physical impairment in this way is contrary to the plain language of**

**the regulations and would be impractical and imprudent.** (Emphasis added)

*Dale v. Wynne*, 497 F. Supp. 2d 1337, 1341 (M.D. Ala. 2007):

> **[T]he perceived physical impairment must be one that is covered under the Act. . . . Dale has not offered any evidence that her obesity was linked to a physiological disorder. . .** The court therefore finds that Dale's obesity is not a disability covered under the Rehabilitation Act. (Emphasis added).

*Merker v. Miami-Dade County*, 485 F. Supp. 2d 1349, 1351 (S.D. Fla. 2007):

> **[O]besity is generally not a qualifying disability, except in the rare case where such condition is shown to be the result of a physiological disorder (and there is no evidence in the record to bring her claim within the exception) . . . Courts have uniformly held that obesity is not a qualifying impairment, or disability, unless it is shown to be the result of a physiological disorder.** (Emphasis added).

*Marsh v. Sunoco, Inc.*, 2006 U.S. Dist. LEXIS 88887, p. 11 (E.D. Pa. 2006):

> **It repeatedly has been held that excess weight or obesity, except in special instances where they relate to a physiological disorder, are not "physical impairments" within the meaning of the statutes. . . .** (Emphasis added)

*Coleman v. Georgia Power Co.*, 81 F. Supp. 2d 1365, 1369 (N.D. Ga. 2000):

> [I]t appears to this court that while obesity generally is not considered an impairment, it can be found to be an impairment in limited circumstances where it is shown both to affect one of the bodily systems outlined in the guideline definition for physical impairment and where such obesity is related to a physiological disorder.

One recent district court case, although brought under the ADAAA (inapplicable here since the amendments post-date Ms. Harrison's termination), is nonetheless instructive. In *Lowe v. American Eurocopter, LLC*, 2010 U.S. Dist. LEXIS 133343, p. 22 (N.D. Miss. Dec. 16, 2010), the Northern District of Mississippi went to great lengths to distinguish the Act post-amendments, essentially confirming that pre-amendments, as here, even morbid obesity was not recognized as an impairment. Citing many of the cases above, the court opined that while the ADAAA may change

things, "prior to the ADAAA, the Interpretive Guidance created by the EEOC on Title I of the ADA provided that except in 'rare circumstances,' obesity is not considered a disabling impairment."

Courts continue to require a physiological basis for obesity to be protected under the ADA. *See Lescoe v. Pennsylvania Dept. of Corrections*, 2011 U.S. Dist. LEXIS 34325, p. 11 (M.D. Pa. Mar. 30, 2011), ("**Given the reluctance of our sister courts in the Third Circuit, as well as other circuit courts of appeal, to accept even morbid obesity as a qualifying physical or mental impairment under the ADA, we find the Magistrate Judge's R&R [finding obesity is not a disability] to be well-reasoned.**") (Emphasis added). *See also Revolinski v. Amtrak*, 2011 U.S. Dist. LEXIS 55507 (E.D. Wis. 2011) ("[O]besity, except in rare cases where the obesity is caused by a physiological disorder, is not a 'physical impairment' …").

As demonstrated above, courts all around the country have rejected claims similar to the EEOC's claim in this case on behalf of Lisa Harrison. The prevailing law is that obesity cannot even be considered to be a disabling impairment unless there is a physiological basis for it. Here, the EEOC does not even plead one. It is most unfair to the companies it targets, here a non-profit organization, that the EEOC continues to try to create new law through litigation, doggedly seeking judicial expansion of the definition of impairment, despite being responsible for deeming, in the first place, that obesity is "rarely a disability." Employers rely on these regulations and guidance to their detriment. And while the courts continue to slap down the EEOC in these efforts, it is at huge expense to the defendant employers, both in cost of defense and negative publicity.

### 3. Plaintiff fails to plead any physiological basis and refuses to answer discovery directed to this issue.

Given the great weight of the jurisprudence above, it is therefore conspicuous that the EEOC

fails to provide any basis for Ms. Harrison's obesity in its Complaint. It summarily pleads that: "At all times relevant to this action, Ms. Harrison had severe obesity, which is a physical impairment within the meaning of the ADA, and which defendant regarded as such an impairment." (Complaint para. 10). This is incorrect as a matter of law, and according to the EEOC's own Guidance, recited above. In its discovery responses, too, Plaintiff failed to allege any physiological basis for Ms. Harrison's obesity. Still trying to determine whether the EEOC is claiming Lisa Harrrison was actually disabled, and furthermore whether the obesity had a physiological basis, RHD's Interrogatory No. 8 requested:

> If you claimed in response to Interrogatory 7 that Lisa Harrison had one or more actual disabilities within the meaning of the ADA, please identify for each
> a)  the cause of the disability
> b)  the doctors who treated Ms. Harrison for same
> c)  the identity of any witnesses you may call to substantiate your claim on this point.

(Exh. "B") Incredibly, the EEOC objected to this Interrogatory allegedly because it seeks information privileged under the work product and deliberative process doctrines! It further went on to object on the basis that "The cause of a disability is not relevant to an ADA claim. Additionally, in many instances, the cause of an impairment is unknown and impossible to ascertain." *Id.*[4]

Suit was filed in September 2010, after pending at the EEOC for three years. In its complaint, the EEOC failed to plead any physiological basis for the obesity, and to date, despite requests to identify the cause of her obesity and any proof thereof, has presented no evidence whatsoever that Lisa Harrison's obesity had a physiological basis. (Exhs. "B" and "C") Instead,

---

[4] See also footnotes 2 and 5 and the pending Motion to Compel for other examples of the EEOC's refusal to reveal its causes of action, the facts supporting same, and otherwise cooperate with the most fundamental discovery requests.

contrary to its own regulations and the governing case law, the EEOC has stated in its discovery responses that "the cause of a disability is not relevant to an ADA claim." (*Id.*, Answer to Interrogatory No. 8). This is incorrect. Without a physiological basis for her obesity, Lisa Harrison was not a qualified individual within the meaning of the ADA. As such, RHD cannot be held liable for any disability discrimination in conjunction with her termination, and her case must be dismissed.

This case is thus ripe for summary judgment. In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court approved the award of no-evidence summary judgments in federal court. Under this standard, if, as here, the issue is one on which the movant does not bear the burden of proof, and an adequate time for discovery has passed, summary judgment is mandated if the respondent fails to make a showing sufficient to establish the existence of each element essential to its cause of action. *Id.* at 322-23. It is not RHD's burden to show that Ms. Harrison's obesity had no physiological basis. Summary judgment can be granted on the EEOC's failure to plead and prove one despite four years elapsing since the Charge was filed. Summary judgment is now appropriate.

C. **OBESITY CANNOT BE "REGARDED AS" A DISABILITY UNLESS DEFENDANT BELIEVED A PHYSIOLOGICAL DISORDER CAUSED IT. EEOC HAS FAILED TO PLEAD OR PROVE THIS.**

In the only claim in this case which was administratively exhausted and thus the only cause of action properly included in the Complaint, the "regarded as" claim, the EEOC nonetheless fatally fails to state a prima facie case. The Complaint states that "at the time of discharge, Defendant regarded Ms. Harrison as being substantially limited in one or more major life activities, including but not limited to walking, as a result of her obesity." (Complaint para. 12). Here again, plaintiff fails to allege that the obesity had a physiological basis, and further fatally fails to claim that

Defendant believed there was a physiological basis for it.  As such, the entire lawsuit should be dismissed with prejudice.

### 1. The law requires for a "regarded as" claim that, at a minimum, the  employer believed the obesity was caused by a physiological disorder.

The foregoing analysis regarding the need for a physiological basis in obesity cases is equally applicable to Plaintiff's "regarded as" claim. The law seeks to protect an employee who is "'perfectly able' to perform a job, but [is] 'rejected . . . because of the "myths, fears and stereotypes" associated with disabilities.'" *Gruener v. Ohio Cas. Ins. Co., 510 F.3d 661, 664 (6th Cir. 2008)* . Thus, the "regarded as" concept is applicable when "(1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities." *Sutton v. United Air Lines, Inc, 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), abrogated by statute*, ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553, *on other grounds.*  Here again, which of these prongs is being relied upon by the EEOC is unknown because it will not answer the questions directed to this issue.[5] Regardless, one approach requires that the employer wrongly regard the employee as having an impairment; the other requires an actual impairment that is not as limiting as the employer believes.

---

5 RHD's Interrogatory No. 11 requests exactly this information, quoting from the EEOC's Compliance Manual on this issue, 29 C.F.R. § 1630.2(l); EEOC Compliance Manual, Section 902. Again, EEOC objects alleging privilege under the work product and deliberative process doctrines and notes that it is not the EEOC's role to decide the facts of this case, that will be for a jury to decide.  "The EEOC does not need to decide or declare whether Defendant correctly regarded Ms. Harrison as having an impairment but wrongly perceived that the impairment substantially limited a major life activity, or (b) Defendant incorrectly perceived Ms. Harrison as having an impairment, which Defendant treated as substantially limiting one or more major life activities."  Subject to this objection the EEOC does identify that Ms. Harrison "had at least one physical impairment within the meaning of the ADA: her obesity.  Whether she had additional impairments that are relevant to this case will be the subject of  continuing discovery [ as will] …whether her obesity substantially limited her in any major life activities."  (Exhs. "B" and "C")  See also fn. 2.

Either way, as established above, for obesity to qualify as an "impairment" means that there is a physiological disorder causing the obesity. *Fat, supra*, at 61. Thus, some courts and commentators require that not only must the employer perceive that a physiological disorder caused the obesity, but that an actual physiological disorder must exist. In other words, the employer must be right in perceiving that a physiological basis exists for the obesity, because only then is obesity a qualifying impairment. Jane Korn, *Too Fat, supra* at pp. 232-233. This was the holding in *EEOC v. Watkins*, where the court refused to even consider whether Watkins had regarded Grindle as being substantially limited in a major life activity after it concluded there was no evidence of any physiological basis for Grindle's obesity.

> The district court simply held, in line with other decisions, that to succeed on a "regarded as" claim, the perceived condition must be an "impairment" under the ADA. *See Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir.1997) (discussing the ADA and the Rehabilitation Act and holding that "to set forth a *prima facie* case...plaintiff must allege either that they are or are perceived to be handicapped *within the definitions of each of the acts*") (emphasis added); *Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997) (also finding that to bring an ADA or RHA claim, a plaintiff must allege that his employer "regarded him as having an 'impairment' *within the meaning of the statutes*") (emphasis in original). …
>
> **Since we find that Grindle has not shown that he suffers from an ADA impairment, we do not address whether Watkins perceived Grindle as substantially limited in any major life activities.**

463 F.3d at 442, fn. 2, 443. *See also Lowe v. American Eurocopter, LLC*, 2010 U.S. Dist. LEXIS 133343, at p. 24 (N.D. Miss. Dec. 16, 2010), where the court again distinguished the treatment Lowe's "regarded as" claim might now get under the ADAAA (inapplicable here) from the previous requirement that a plaintiff demonstrate that the disability she is regarded as having **is an actual**

**qualified disability** under the ADA (i.e. that it have a physiological basis). See 42 U.S.C.A. §§ 12101(1)(C), (3).

Regardless of whether an actual physiological disorder caused the obesity, it is clear that, at a minimum, to satisfy the "regarded as" definition of disability, a plaintiff must be able to prove that the employer *believed* plaintiff's obesity was caused by a physiological disorder.   While a few plaintiffs have been able to meet this hurdle, most have not.   Courts have held time and time again that perceiving an employee as obese is simply not equivalent to perceiving the employee as having an impairment or being disabled; rather the EEOC must raise a genuine dispute with respect to whether RHD perceived Lisa Harrison as having a physical or mental impairment within the meaning of the ADA.  *Francis*, 129 F.3d at 287 (affirming dismissal of claims by obese employee who failed to allege that employer perceived him as suffering from physiological disorder); *Andrews*, 104 F.3d at 810 (affirming dismissal of claims by obese employee because employee did not allege that his employer perceived his weight the result of a physiological condition); *Furst v. State of New York Unified Court Sys.*, No. Civ. A. 97-CV 1502, 1999 WL 1021817, at *5-*6 (E.D.N.Y. Oct. 18, 1999) (granting summary judgment and dismissing ADA claim brought by employee terminated for exceeding weight requirement because employee failed to establish that his employer "perceived him as suffering from a physiological weight-based disorder"); *Tudyman v. United Airlines*, 608 F. Supp. 739, 746 (C.D. Cal. 1984)(employer who perceived employee as not being under a certain weight did not perceive employee as having an impairment).

Most recently, *Revolinski v. Amtrak*, 2011 U.S. Dist. LEXIS 55507 (E.D. Wis. 2011), decided just two months ago, reaffirmed the requirement established as early as 1997 that to establish a claim

under the "regarded as" prong with regard to obesity, a plaintiff must demonstrate that "'the employer believes that [the plaintiff] suffers from a physiological disorder that substantially limits his major life activities.' *Citing Francis v. City of Meridien,* 129 F.3d 281, 286 (2d Cir. 1997)); *see also Andrews v. Ohio,* 104 F.3d 803 (6th Cir. Ohio 1997). Since Revolinski merely pled he was obese, and was unable to establish that Amtrak regarded his obesity as caused by a physiological disorder, he could not succeed on either an actually disabled or a "regarded as" disabled claim and summary judgment was granted.

Similarly, the Third Circuit has recognized that merely perceiving an employee as obese, without believing there was a physiological cause for it, would cause the "regarded as prong" to "become a catch-all cause of action for discrimination based upon appearance, size, and any number of other things far removed from the reasons the [ADA] was passed." *Francis,* 129 F.3d at 287; *Walton,* 168 F.3d at 665 ("We have not recognized a cause of action against an employer who discriminates against an employee because it perceives the employee as disabled by obesity. Nor need we do so now....") *See also Middleton v. CSX Transp., Inc.,* 2008 U.S. Dist. LEXIS 24977, p. 13 (N.D. Fla. 2008) (Summary judgment on regarded as claim where plaintiff failed to present any evidence to show that CSX believed, rightly or wrongly, that he had a physical impairment for purpose of the ADA; i.e. that his obesity was the result of a physiological disorder or condition); *Dale v. Wynne,* 497 F. Supp. 2d 1337, 1341 (M.D. Ala. 2007) ("Dale must show that she was perceived to have not just a weight-related disorder, but a physiologically-based weight-related disorder; thus, for example, if she were perceived by her employer as having a thyroid disorder that causes her weight problem, then arguably she would have a better chance of falling within the first

category of a 'regarded as' claim"); *Marsh v. Sunoco, Inc.*, 2006 U.S. Dist. LEXIS 88887, p. 11 (E.D. Pa. Dec. 6, 2006)(To be covered under [the "treated as having a substantially limiting impairment"] prong, "the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled.... In the present case, a finding that Plaintiff is overweight--unless it is the result of a physiological disorder--would not bring him under the protection of the ADA.  Since Plaintiff does not claim that Sunoco regarded him as suffering from a physiological weight-related disorder, his ADA claim must fail.")

**2.  Plaintiff fails to plead that RHD believed Harrison's obesity was caused by any physiological disorder and refuses to answer discovery directed to this issue.**

Given the great weight of the jurisprudence above regarding this critical element of a "regarded as" claim, it is again conspicuous that the EEOC fails to allege that RHD viewed Ms. Harrison's obesity as caused by a physiological disorder.  It merely pled that "At all times relevant to this action, Ms. Harrison had severe obesity, which is a physical impairment within the meaning of the ADA, **and which defendant regarded as such an impairment**." (Complaint para. 10).  Here again, the EEOC refused to cooperate with discovery requests targeted at this issue.  (Exh. "A", Interrogatory No. 10; see also fn. 2, 5).[6]

RHD thus urges dismissal of plaintiff's "regarded as" claim under the same Celotex "no-evidence" standard set forth above.  Summary judgment was granted where plaintiff failed to plead the essential element of belief of a physiological cause of obesity in *Spiegel v. Schulmann*, 2006 U.S.

---

[6] While not RHD's burden, in an abundance of caution, it does provide the Declarations of Randee Gallo, the HUB director, overseeing all Louisiana programs, including Family House of Louisiana, where Lisa Harrison worked, and

Dist. LEXIS 86531, 36–41 (E.D.N.Y. 2006), on appeal 604 F.3d 72 (2d Cir. 2010) (reversed and remanded on other grounds). The court's analysis there applies here:

> Obesity alone is not a physical impairment unless it results from a physiological disorder of the sort described in 29 C.F.R. § 1630.2(h)(1). *See Francis v. City of Meriden,* 129 F.3d 281, 286 (2d Cir. 1997). . . . Accordingly, plaintiffs must allege and prove more than just that Spiegel was discharged because of his weight. **Plaintiffs must allege, and adduce evidence to show, that defendants believed, even mistakenly, that Spiegel had a "physical impairment" -- that is, that his weight problem stemmed from a physiological disorder -- and that defendants fired him because of that belief. Plaintiffs have not done so. Plaintiffs do not even allege in their pleadings that defendants believed Spiegel suffered from a physiological disorder.** To the contrary, the Second Amended Complaint implies that Schulmann believed Spiegel's weight problem was due to overindulgence.
>
> **Since there is nothing in the complaint, or in any of the evidence produced by plaintiffs, to suggest that Schulmann (or UAK) believed that Spiegel's weight condition was the symptom of a physiological disorder, plaintiffs have neither alleged nor established that Spiegel is disabled under 42 U.S.C. § 12102(2)(C).** Accordingly, even if this Court had personal jurisdiction over UAK, it would find that plaintiffs' allegations concerning UAK's termination of Spiegel from the Bensonhurst Center **failed to state a prima facie case of discrimination under the ADA.** (Emphasis added).

## CONCLUSION

RHD has amply demonstrated above that the EEOC has wholly failed to state a prima facie case of disability discrimination. It has failed to exhaust administrative remedies on any actually disabled claim it may be attempting to assert. It has failed to plead an essential element of an obesity discrimination claim, namely that a physiological cause existed for Ms. Harrison's obesity, and refuses to answer discovery directed to this question, incorrectly asserting that the cause of a disability does not matter. When it comes to obesity, cause matters, precisely because the EEOC carved out obesity for special treatment when it wrote its Regulations and Interpretive Guidance. It

---

Michele Vick, who from 2005 until Lisa Harrison's termination, was the Director of Family House of Louisiana and

has similarly failed to plead an essential element of its only existing cause of action: its claim that RHD regarded Lisa Harrison as disabled due to her obesity." The missing essential element is that RHD believed a physiological cause existed for Ms. Harrison's obesity. Though under no obligation to do so, RHD has shown its decision makers had no such belief. While the EEOC's gamesmanship in failing to clearly set forth its cause(s) of action in this matter should not be condoned by this Court, as a matter of law, Plaintiff cannot prevail under either an "actually disabled" theory nor a "regarded as" disabled theory.  Even if the actually disabled claim was to survive the EEOC's failure to exhaust, without pleading and proving a) there was a  physiological basis for her obesity, or b) RHD perceived of Ms. Harrison's obesity as having a physiological basis, Ms. Harrison does not have an "impairment" within the meaning of the Americans with Disabilities Act and thus she is not entitled to its protections on either claim.

<div style="margin-left:40%">

Respectfully submitted,

**ADAMS AND REESE** [LLP]
/s Leslie A. Lanusse
Leslie A. Lanusse (#14115)
Janis van Meerveld, T.A. (#18478)
Shelly Spansel Howat (# 30067)
4500 One Shell Square
New Orleans, LA 70139
Telephone:     (504) 581-3234
Facsimile:     (504) 566-0210
*Attorneys for Defendant,*
*Resources for Human Development, Inc.*
*d/b/a Family House of Louisiana*

</div>

---

thus supervisor of Lisa Harrison.  Both verify that they had no idea why Ms. Harrison was obese. (Exh. "H")

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2011, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system. Notice of this filing will be sent to all counsel electronically by operation of the Court's electronic filing system.

s/ Leslie Lanusse
LESLIE A. LANUSSE