## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** Plaintiff | **CIVIL ACTION NO. 10-3322** |
| **v.** | **SECTION B JUDGE LEMELLE** |
| **RESOURCES FOR HUMAN DEVELOPMENT, INC. D/B/A FAMILY HOUSE OF LOUISIANA** Defendant | **MAG. 2 (WILKINSON)** |

---

### EEOC'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

---

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission"), opposes the Motion to Compel filed by Defendant, Resources for Human Development, Inc. d/b/a Family House of Louisiana ("RHD" or "Defendant"). The crux of Defendant's motion to compel is that Defendant purports not to understand the EEOC's legal theories in pursuing this Americans with Disabilities Act enforcement action. Plaintiff has, however, provided Defendant with all of the facts available to it, responded to all of Defendant's discovery requests, and repeatedly explained, through discovery and telephone conversations with counsel, that it is in fact pursuing all available theories of liability. Defendant's real complaint is not, as it suggests, that it does not know what Plaintiff's theory is. Rather, Defendant simply disagrees that Plaintiff can pursue multiple theories of coverage, and desires to impermissibly force the Commission to parse and interpret the facts for Defendant's strategic benefit.

Additionally, despite the highly sensitive nature of the subject documents, and despite the EEOC's diligent efforts to obtain responsive discovery and provide it to Defendant, Defendant contends it is entitled to have the EEOC create authorizations for the Defendant to use in obtaining personal and confidential income tax, Social Security, and medical documents directly from the Internal Revenue Service, Social Security Administration, and directly from Ms. Harrison's physicians and hospitals.   The EEOC has advised Defendant that it has obtained executed authorizations for the release of documents to the Commission.   The Commission has already commenced producing documents returned from those authorizations to Defendant. Defendant's insistence — for which it has articulated no principled basis — that the EEOC deliver to it additional document release authorizations is inappropriate and is not supported by the Federal Rules of Civil Procedure.   Further, Defendant's requests would result in unnecessary duplication of discovery efforts, and run the risk of allowing Defendant to obtain irrelevant, confidential documents.

## I.        BACKGROUND

Defendant hired Lisa Harrison on November 23, 1999, as a Prevention / Intervention specialist.   Her job required her to oversee a day care program which cared for the children of mothers who were staying at Defendant's facility, where they were treated for addiction.   As part of her job, Ms. Harrison cared for children and supervised a teaching aid and a "foster grandmother," who also cared for the children.   Ms. Harrison worked for Defendant for almost eight years, devoting herself to the children in her care.

On September 6, 2007, Defendant terminated Ms. Harrison.   Ms. Harrison's Charge of Discrimination states that she was terminated because of Defendant's perception that she had limited mobility and because of Defendant's assumptions about her weight, such as that she

could not perform CPR, despite having an active CPR card.  (R. Doc. 17-3.)  On her Intake Questionnaire, Ms. Harrison wrote that Ms. "Vick terminated me for the reason of weight." (R. Doc. 19-6 at 3.)

As alleged in Plaintiff's Complaint, at all times relevant, Ms. Harrison was morbidly obese.  She was 5'2" tall and weighed over 500 pounds during her employment with Defendant.[1] Indeed, Defendant in essence admits that Ms. Harrison was morbidly obese, affirmatively asserting in a pending motion for summary judgment that Ms. Harrison weighed more than 400 pounds when Defendant hired her. (R. Doc. 19-1 at ¶ 2.)  Ms. Harrison was also qualified and able to do her job, and had done so for many years.  On her intake questionnaire, Ms. Harrison noted: "I have been working for this company for 8 years.  At no time has my weight caused difficulty or stopped me from performing my job.  I have never had a write up or supervision concerning this matter."  (R. Doc. 19-6 at 2.)  In fact, the only performance evaluation Defendant has produced, from March 24, 2006, shows that Ms. Harrison's supervisor, Michelle Vick, rated Ms. Harrison as "excellent" in seven out of 12 areas, including "Quality of work."[2]  This evaluation shows that Defendant did not conclude there were any areas where Ms. Harrison had a "Need for Improvement" or was "Poor," despite Defendant's contention that it terminated Ms. Harrison because of performance deficiencies.

---

[1] For example, Ms. Harrison's medical records indicate that during doctor's appointments in 2005 and 2006, Ms. Harrison weighed over 500 pounds.  At an appointment in June of 2006, three months after receiving an excellent performance evaluation, Ms. Harrison weighed 527 pounds.  One week after she was terminated, Ms. Harrison's medical records show that she weighed 527 pounds.

[2] Ms. Vick did not rate Ms. Harrison in one category, rated her as "good," the second highest rating, in 3 categories, and Ms. Harrison's only "adequate" rating was for the category of "Completed professional development/training plan for the year."   Under this category, Ms. Harrison noted that because of Hurricane Katrina, she had been unable to attend any professional trainings.  Ms. Vick noted that Ms. Harrison had, however, attended weekly CIT training, and evaluated Ms. Harrison higher than her own self evaluation.

Following her termination, Ms. Harrison filed a Charge of Discrimination with the EEOC on October 17, 2007. (R. Doc. 19-3.)  During the investigation, on November 1, 2009, Ms. Harrison died.  Her cause of death is listed on her death certificate as "morbid obesity."  The death certificate also lists hypertension, diabetes, and congestive heart failure as other significant conditions contributing to her death.[3]  The EEOC filed this suit on behalf of the estate of Ms. Harrison on September 30, 2010.  (Compl., R. Doc. 1.)  The Complaint alleges that Ms. Harrison had severe obesity, which is a physical impairment within the meaning of the ADA, and which Defendant regarded as being an impairment. (Compl. ¶ 10.)  The Complaint further alleges that Defendant violated Title I of the Americans with Disabilities Act of 1990 (ADA) by terminating Ms. Harrison's employment because of her disability. (Compl., ¶ 14.)

## II.   ARGUMENT

Plaintiff and Defendant's disagreement concerns interpretations of the ADA, as well as the scope of the work product protection.  Defendant inappropriately wishes to use discovery — the purpose of which is disclosure of facts — to divine the EEOC's legal arguments, strategies, and theories.  The EEOC sets out here the background law and its argument on these legal issues, which argument is pertinent to the Interrogatories further discussed below.

### A.   Americans with Disabilities Act

The parties' discovery dispute centers in part on the scope of the Americans with Disabilities Act, and how Plaintiff may pursue its ADA claim.  To establish a *prima facie* violation of the ADA, Plaintiff must show that Ms. Harrison was (1) disabled within the meaning of the ADA, (2) "a qualified individual with a disability," and (3) suffered an adverse

---

[3] As this is general background information, the EEOC is not attaching supporting exhibits.  The EEOC would be happy to supplement the record, however, if it would be helpful to the Court to have exhibits supporting all statements in the EEOC's Background section.

4

employment decision because of her disability. *See Hamilton v. Southwestern Bell Telephone Co.,* 136 F.3d 1047, 1050 (5th Cir. 1998).  Defendant's motion to compel concerns discovery requests aimed solely at the threshold issue of whether Ms. Harrison was disabled within the meaning of the ADA.

A "disability" under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  The regulations define "physical impairment" as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1).  A "major life activity," as defined by the EEOC regulations includes functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2.  One is "substantially limited" in a major life activity if she or he is:

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or

> (ii) [s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2; *see also McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000).

Contrary to Defendant's assertion that Plaintiff must choose to proceed under the theory that Ms. Harrison was actually disabled or regarded as disabled, plaintiffs can pursue one or

more of the three ways of proving a disability.  The Fifth Circuit has recognized as much in reviewing cases where plaintiffs have alleged both actual and regarded as disabilities.   In *McInnis*, for example, the Court noted that it "need not reach the issue of whether [plaintiff] was actually disabled because, even if he does not suffer from an 'actual' disability, [plaintiff] may still recover if his employer 'regards' him as being disabled." *McInnis*, 207 F.3d at 281.  The Fifth Circuit Pattern Civil Jury Instructions also recognize this reality, in providing that Courts instruct the jury on all three ways of showing a disability within the meaning of the ADA. FEDCIV-JI5C 11.7.1 (2009) ("Disability means (1) a physical or mental impairment that substantially limits one or more major life activities; or (2) a record of such an impairment; or (3) being regarded as having such an impairment.")

Consistent with these instructions, in *U.S. E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 406 F. Supp. 2d 645, 651 (E.D. La. 2005), Judge Vance noted that she instructed the jury on all three ways of being disabled within the meaning of the ADA. *See id.* at 651 ("The Court explained to the jury that an employee may be disabled under the ADA in one of three ways."). In *DuPont*, the EEOC pursued both a "regarded as" and "actual disability" claim.  At the summary judgment stage, "the Court found that DuPont regarded Barrios as disabled under the ADA, but the Court found that issues of fact existed as to whether Barrios was actually disabled under the ADA." *Id.* at 650-61.  At the summary judgment stage, Judge Vance also noted that it was a question for the jury whether the impairment was actually substantially limiting. *U.S. E.E.O.C. v. E.I. DuPont de Nemours*, 347 F. Supp. 2d 284, 296 (E.D. La. 2004). *See also E.E.O.C. v. Texas Bus Lines*, 923 F. Supp. 965, 970 (S.D. Tex. 1996) ("the Court must determine … 2) whether Manuel was disabled within the meaning of the ADA, *or was perceived as disabled* within the meaning of the ADA") (emphasis added).

Finally, the Regulations to the ADA Amendments Act further note that "An individual may establish coverage under any one or more of these three prongs of the definition of disability, i.e., paragraphs (g)(1)(i) (the "actual disability" prong), (g)(1)(ii) (the "record of" prong), and/or (g)(1)(iii) (the "regarded as" prong) of this section." 29 CFR § 1630.2(g)(2).[4] Consistent with case law from the Fifth Circuit and Eastern District of Louisiana, the EEOC is entitled to pursue multiple theories of establishing coverage under the ADA, including, for example, alleging that Ms. Harrison was actually disabled and that Defendant regarded her as disabled.[5]

### B.      Work Product

The EEOC objected to numerous of Defendant's Interrogatories as seeking work product and counsel's legal theories.[6]   The work product doctrine provides protection for the intangible mental impressions, conclusions, opinions or legal theories of counsel. *See* 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2026 (3d ed.); *Hickman v. Taylor*, 329

---

[4] The EEOC does not contend that this case falls under the ADA Amendments Act, but offers this terminology merely for illustrative purposes that an individual may pursue, and even establish, coverage under more than one prong.

[5] Although the ADA has different legal standards for showing an actual disability and a regarded-as disability, there is no mutual *factual* inconsistency between a person's being actually disabled, being perceived as disabled, and having a record of disability.

[6] The EEOC also asserted an objection based on the deliberative process doctrine.   The deliberative process privilege protects not only documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated, but also testimony concerning those documents. *See, e.g., Jimenez v. Paw-Paw's Camper City, Inc.*, 2001 WL 1445027, *1 (E.D. La. 2001); *EEOC v. Gold River Operating Corp.,* 2007 WL 983853, *8 (D. Nev. Mar. 30, 2007) (noting that the privilege "permits the government to withhold documents or prevent testimony that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions are made); *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993) (The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency).  The EEOC has not, however, withheld any documents or testimony that pertain to the issues before the Court on the basis of the deliberative process doctrine.  Accordingly, the EEOC does not address this privilege in this motion.

U.S. 495 (1947); *Evans v. United Fire & Cas. Ins. Co.*, 2007 WL 2323363 (E.D. La. Aug. 9, 2007).  The Federal Rules of Civil Procedure additionally provide that the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).  Although the work product doctrine is most commonly applied to documents and things, unjustified disclosure of the opinions or mental processes of counsel may occur when questions are posed which seek information at depositions or in interrogatories. *U.S. v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America*, 90-5722, 1992 WL 208284, *7 (S.D.N.Y. Aug. 18, 1992) (citing 4 *Moore's Federal Practice,* ¶ 26.64[1] at 26-349 (2d ed. 1991)).  Defendant's Interrogatories at issue in this Motion go directly to EEOC counsel's mental impressions, conclusions, opinions or legal theories.

The EEOC has provided to Defendant all of the facts it has available to it.  The facts of this case consist of the testimony, discovery responses, and documents that are the subject of on-going discovery.   Both parties already have this information and continue to exchange it.  Additionally, Defendant is scheduled to depose the EEOC's investigator and Ms. Harrison's family members.[7]  Defendant is also free to interview or depose other witnesses.  Defendant seeks not these facts, but rather to gain access to the process by which EEOC counsel has worked to build the Government's case and the results of EEOC counsel's sifting and analysis of the facts and documents.  Defendant wishes to determine what potential evidence and potential lines of proof the EEOC views as particularly probative or most helpful.  In other words, Defendant seeks to determine how EEOC counsel has interpreted the facts and how EEOC counsel intends

---

[7] Defendant contends it needs these responses because the Charging Party is deceased.  While the EEOC recognizes the additional challenges in this litigation because the Charging Party is deceased, it disagrees that Ms. Harrison would have been able to offer testimony on legal definitions, such as whether she has an impairment within the meaning of the ADA.

to muster the evidence in support of the Government's case.  These areas of inquiry seek to discover the lines of proof the EEOC may use to establish its case and inferences to be drawn from evidence already available to Defendant.

Delving into EEOC counsels' impressions of the case and evidence as well as their legal theories, is improper.  "[I]t is the selection and compilation of the relevant facts that is at the heart of the work product doctrine." *EEOC v. HBE Corp*., 157 F.R.D. 465, 466 (E.D. Mo. 1994). As the Supreme Court stated in *Hickman v. Taylor*, "[p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." 329 U.S. 495, 511 (1947). *See also In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) (holding selection and compilation of discoverable documents by counsel is opinion work product and not discoverable); *American Nat'l Red Cross v. Travelers Indemnity Co. of Rhode Island*, 896 F. Supp. 8, 13-14 (D.D.C. 1995) (noting that when plaintiff's counsel requested of [the designee] a description of the "facts and documents which [defendant] contends support" each affirmative defense, [plaintiff's] counsel was asking questions that intruded upon protected work product: in effect, what [plaintiff] was requesting was insight into [defendant's] defense plan.").  Defendant already has all the facts and documents that are available to Plaintiff.  Rather than propounding Interrogatories that invade counsels' work product, "Defendant and its counsel can read the[ documents] and determine which documents pertain to an allegation, and to what degree, directly or indirectly." *District Council*, 1992 WL 208284 at *14.

### C.     Interrogatory No. 7

This compound interrogatory[8] asks:

---

[8] "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no

**Interrogatory No. 7: Do you claim Lisa Harrison was actually disabled? If so, please state:**
    **(1)  what impairment(s) Lisa Harrison had**
    **(2)   what major life activity was substantially limited by that or those impairment(s)**
    **(3)  For every major life activity you claim Lisa Harrison was substantially limited in performing because of the impairment(s) identified in Interrogatory 7(1) above, please state whether Lisa Harrison was unable to perform the major life activity  or was significantly restricted in performing the major life activity, and, if you answer, significantly restricted, please explain how.**

The EEOC objected to this Interrogatory, but also responded to it, twice, subject to those objections. (*See* R. Doc. 17-4; 17-7.)  Defendant's e-mail attached to its Motion acknowledges that it is aware that the EEOC is pursuing an actual disability theory. (R. Doc. 17-5 at 1.)  The EEOC's response further states that Ms. Harrison's impairments may include, but are not limited to, morbid obesity, diabetes, hyperlipidemia, hypertension, hypothyroidism, and asthma.  The response additionally states that, based on the record evidence adduced thus far, as well as evidence later to be obtained, a jury would be free at trial to infer that Ms. Harrison was substantially limited in the major life activities of walking, standing, bending, being mobile, eating, breathing, and working.  In response to sub-part (3), whether Ms. Harrison was unable or significantly restricting in performing the major life activity, the answer states that Ms. Harrison was not "unable" to perform these major life activities.  Further, the EEOC may provide expert testimony and or treating physician testimony on the specifics of these impairments.  The EEOC's expert deadline is three months away, and the discovery deadline is five months away.  The EEOC intends to continue pursuing these legal theories.[2]

---

more than 25 written interrogatories, *including all discrete subparts*." Fed. R. Civ. P. 33(a)(1) (emphasis added).

[2] Defendant is aware of the identity of Ms. Harrison's treating physicians, and may seek to depose them concerning the nature of Ms. Harrison's impairments, and their effects on her engagement in major life activities.  Likewise, the EEOC is entitled to pursue evidence from Ms. Harrison's treating doctors.  The EEOC is also entitled to seek additional evidence from experts. If the EEOC hereafter obtains additional evidence supporting its claims, that evidence will be subject to the discovery process.  However, the EEOC cannot produce evidence before the

Despite the EEOC's objections, the EEOC has not withheld any facts from Defendant. As noted above, Defendant has all the facts available to the EEOC, as the EEOC was not a party to any of the events at issue in this lawsuit, and has developed the facts from the exact same source documents it has provided to Defendant. Therefore, the EEOC referred Defendant to documents pursuant to Rule 33(d). The EEOC has, for example, specified the records that may be reviewed by referring Defendant to, for example, sections of the Administrative Charge File, such as Defendant's own statements during the Investigation, and other documents, such as Ms. Harrison's medical records, sometimes by specific bates number. Plaintiff did not offer even further specificity in order to protect its own mental impressions as to which facts are relevant, as elaborated on in its discussion of work product, above. The EEOC has no knowledge, at this time, of any additional facts to provide to Defendant. Defendant is instead seeking EEOC counsel's mental impressions, opinions and legal theories as it litigates this enforcement action.[10]

While Rule 33(a)(2) allows for contention interrogatories, it further provides that "the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." The EEOC at this point is still pursuing discovery on all available ways of proving that Ms. Harrison was disabled within the meaning of the ADA.

---

Commission obtains it.

[10] Defendant also complains in its motion, for the first time, that the EEOC has not submitted a privilege log. As noted above, the EEOC has not withheld any document that is at issue in this Motion to Compel. "[S]uch a requirement simply does not make sense where the allegedly privileged material is testimony rather than documents." *Scott v. PPG Industries, Inc.*, 142 F.R.D. 291, 294 (N.D.W.Va. 1992). Nevertheless, out of an abundance of caution, the EEOC attaches as Exhibit A, and therefore also serves on Defendant, a privilege log.

D.      Interrogatory No. 8

**Interrogatory No. 8: If you claimed in response to Interrogatory 7 that Lisa Harrison had one or more actual disabilities within the meaning of the Americans with Disabilities Act, please identify for each**
   **a)  the cause of the disability**
   **b)  the doctors who treated Ms. Harrison for same**
   **c)  the identity of any witnesses you may call to substantiate your claim on this point.**

With respect to the EEOC's work product and compound objections, the EEOC respectfully refers the Court to its discussion of these objections above. Further, in response to 8(b) and 8(c), the EEOC has provided in its response, and in numerous other documents, including its Initial Disclosures, Responses to Interrogatories and Requests for Production of Documents, and in telephone conversations with counsel, the names of all doctors who have treated Ms. Harrison, and has identified all witnesses that it is currently aware of whom the EEOC may use to prove its claim. However, in 8(a), Defendant further contends it is entitled to know the cause of any of Ms. Harrison's impairments. Plaintiff has noted that the cause of an impairment is not relevant, and further, may be impossible to ascertain.

There is nothing in the ADA that requires proof of causation for a disorder or condition to be recognized as an impairment.[11] The EEOC's compliance manual provides that "The cause of

---

[11] In fact, the original source of the EEOC's ADA regulations explicitly stated that causation is irrelevant to the impairment inquiry. The EEOC's regulations adopted the definition of impairment found in regulations promulgated by the Department of Education implementing Section 504 of the Rehabilitation Act. *See* 29 C.F.R. pt. 1630 app. § 1630.2(h). The appendix to these Department of Education regulations specifically provides that an impairment includes "*any condition which is mental or physical but whose precise nature is not at present known.*" 34 C.F.R. pt. 104 app. A, at 387 (2006) (emphasis added); *see also* 45 C.F.R. pt. 84 app. A, at 367 (2005) (same); Compl. Man. § 902.2(e) ("The cause of a condition has no effect on whether that condition is an impairment."); *cf.* H.R. Rep. No. 101-485(III), at 29 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 267, 452 (the legislative history of the ADA, explaining that "[t]he cause of a disability is always irrelevant to the determination of disability"); *Cook v. Rhode Island*, 10 F.3d 17, 22 (1st Cir. 1993) ("The term also encompasses disorders and conditions 'whose precise nature is not at present known.'") (citing 45 C.F.R. § 84.3(j)(2)(i)(A), App. A, Subpart A(3), at 377 (1992)).

a condition has no effect on whether that condition is an impairment." EEOC Compliance Manual Section 902.2(e).[12]  In further explanation, the manual states:

> Voluntariness is irrelevant when determining whether a condition constitutes an impairment.  For example, an individual who develops lung cancer as a result of smoking has an impairment, notwithstanding the fact that some apparently volitional act of the individual may have caused the impairment.  The cause of a condition has no effect on whether that condition is an impairment. See House Judiciary Report at 29 (noting that "[t]he cause of a disability is always irrelevant to the determination of disability"); see also Cook v. Rhode Island Dep't of Mental Health, Retardation and Hosp., 10 F.3d 17, 63 EPD Par. 42,673, 2 AD Cas. (BNA) 1476 (1st Cir. 1993).

*Id.*  As discussed above in the background law on the ADA, the EEOC's regulations define physical impairment as "a physiological disorder, or condition . . . ." 29 C.F.R. § 1630.2(h)(1). The regulatory definition does not require a known *cause*, but rather a physical *condition or physiological disorder.*

The exception, not applicable here, is for mere physical characteristics which are not inherently physiological disorders, or conditions.  Physical characteristics, including weight, "that are within 'normal' range *and* are not the result of a physiological disorder" are not impairments. *See* EEOC Compliance Manual Section 902.2(c)(5) (citing 29 C.F.R. pt. 1630 app. § 1630.2(h) (emphasis added)).[13]  But morbid, or severe, obesity is not a physical characteristic

---

[12] The EEOC's Compliance Manual, Section 902 is available at: http://www.eeoc.gov/policy/docs/902cm.html.  The Supreme Court has noted that the agency's policy statements in the compliance manual "are entitled to a 'measure of respect.'" *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) ("[T]he agency's policy statements, embodied in its compliance manual and internal directives, interpret not only the regulations but also the statute itself. Assuming these interpretive statements are not entitled to full *Chevron* deference, they do reflect "'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'") (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)).

[13] Defendant also cites to 29 C.F.R. § 1630.2(h), but ignores the relevance of the word "and," which requires that a physical characteristic, as opposed to a physical impairment, is both within normal range *and* is not the result of a physiological disorder.

within "normal" range.   The Compliance Manual explicitly provides that morbid obesity constitutes an impairment:

> On the other hand, severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment.  In addition, a person with obesity may have an underlying or resultant physiological disorder, such as hypertension or a thyroid disorder.  A physiological disorder is an impairment.

*Id.* at Section 902.2(c)(5)(2) (citations omitted).  There is no need to identify a cause of morbid obesity to properly characterize it as a "physiological disorder" or as a "condition."

The "causation" requirement therefore exists only for weight within the range of normal. In other words, one who is moderately overweight does not have an ADA impairment unless this mild obesity stems from some accompanying physiological disorder. *Cf. Andrews v. Ohio*, 104 F.3d 803, 810 (6th Cir. 19997) (a physical characteristic "does not, *without more,* equal a physiological disorder") (emphasis added)).   When weight has risen to such an exceedingly abnormal level, it is no longer a mere physical characteristic.   It is instead a physiological disorder, or condition that satisfies the regulatory definition of "impairment."   Ms. Harrison's death certificate lists "morbid obesity" as a cause of death.  Defendant's argument that morbid obesity is a mere physical characteristic amounts to suggesting that Ms. Harrison died from a physical characteristic rather than a substantially limiting impairment.

The Sixth Circuit has further noted that the ADA:

> contains no language suggesting that its protection is linked to *how* an individual became impaired, or whether an individual contributed to his or her impairment.  On the contrary, the Act indisputably applies to numerous conditions that may be caused or exacerbated by voluntary conduct, such as alcoholism, AIDS, diabetes, cancer resulting from cigarette smoking, heart disease resulting from excess of various types, and the like.

*Andrews*, 104 F.3d at 809 (quoting *Cook*, 10 F.3d at 24 (emphasis added)).  The cause of morbid obesity is just as irrelevant as the cause of other impairments within the meaning

of the ADA, including AIDS, lung cancer, and heart disease.  The EEOC is not aware of

any cases requiring a plaintiff to show the cause of the impairment in any context other

than an obesity claim.  There is no Fifth Circuit case law of which the EEOC is aware

requiring such a showing in any ADA case.[14]  To require establishment of the underlying

cause of the impairment in a morbid obesity cause, but not in all other kinds of disabilities

cases, would epitomize the very prejudices and stereotypes which the ADA was passed to

address.

Further, it many cases, it may be impossible to ascertain the precise cause of an

impairment, including for morbid obesity.  *See, e.g.,* Elizabeth E. Theran, "Free To Be

Arbitrary And . . . Capricious": Weight-Based Discrimination and the Logic of American

Antidiscrimination Law, 11 Cornell J.L. & Pub. Pol'y 113, 148-49 (2001) (noting that

morbid obesity "is part of the mystery that medical researchers are currently trying to

understand").

Finally, even if the cause of an impairment were relevant, which is disputed,

counsel for the EEOC cannot at this time provide a medical opinion on the physiological

cause of morbid obesity.  Rule 33(b) requires a party to "furnish the information available

to the party."  The EEOC may use expert or treating physician testimony to establish this

evidence.[15]  Its decisions about that are protected work product.  But Defendant will have

---

[14] In *EEOC v. Texas Bus Lines*, 923 F. Supp. 965 (S.D. Tex. 1996), a case within the Fifth Circuit where the Court held that the defendant employer regarded the applicant as disabled because of her obesity, there was no evidence about the cause of the applicant's obesity. "Additionally, when questioned as to whether obesity could by symptomatic of other ailments, Dr. Frierson answered yes, and stated that obesity could indicate a thyroid, ovarian, or hormonal problem.  However, Dr. Frierson found no evidence of any such ailments in [the applicant] *that could have caused* the obesity." *Id.* at 978 (emphasis added).
[15] In *Cook v. State of Rhode Island, Dep't of Mental Health, Retardation, and Hospitals*, 10 F.3d 17 (1st Cir. 1993), for example, the Court held that "the jury could plausibly have found that

its opportunity to depose any such individual, in accordance with the Court's Scheduling

Order, to determine the facts supporting any such medical opinion.  Three months remain

for the EEOC to produce expert reports, and five months remain for the EEOC to adduce

further fact evidence.  Until the EEOC obtains such additional evidence, it cannot produce

it to Defendant.

### E.   Interrogatory No. 10

**Interrogatory No. 10: Do you claim Lisa Harrison was regarded as disabled by anyone at RHD?  If so, please state:**

> a) **what impairment(s) you claim RHD perceived Lisa Harrison of having**
> b) **every person at RHD who you claim perceived of Lisa Harrison having that or those impairment(s)**
> c) **what major life activity you claim RHD believed Lisa Harrison was substantially limited in performing and identify every person you believe perceived Lisa Harrison of being unable to perform that or those major life activity(s)**
> d) **for every person identified in Interrogatory 10(c), please identify the major life activity you claim they believed Lisa Harrison was substantially limited in performing, whether they believed Lisa Harrison was unable or significantly restricted in performing that major life activity and the factual basis for your statement that that person believed Lisa Harrison was unable or significantly restricted in performing that major life activity.**

Consistent with the EEOC's response to Interrogatory Nos. 7 and 8, here the EEOC has

again referred Defendant to its current sources of facts responsive to this Interrogatory, including

specifically referring defendant to its own position statement, its own comments to the EEOC

investigator, and affidavits it submitted to the EEOC during the investigation, consistent with

Rule 33(d).[16]  As the EEOC has not yet conducted any depositions in this action, it has no other

---

plaintiff had a physical impairment; after all, she admittedly suffered from morbid obesity, and she presented expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems." *Id.* at 23.

[16] Defendant's contention that this is not specific enough does not make sense to the

source of facts regarding Defendant's employees' perceptions of Ms. Harrison's obesity.[17] *See*

Fed. R. Civ. P. 33(b).

### F.     Interrogatory No. 11

**Interrogatory No. 11: For each substantial limitation you claim in Interrogatory 10 (c) above, do you claim that Ms. Harrison:**

**(1) [h]ad a physical or mental impairment that does not substantially limit major life activities but was treated by a covered entity as constituting such limitation;**

**(2) [h]ad a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or**

**(3) [h]ad none of the impairments defined in [the definition of the term "impairment"] but was treated by the covered entity as having a substantially limiting impairment.**

With this Interrogatory, Defendant asks the EEOC to pick a specific sub-definition for the "regarded-as" prong of disability.  The EEOC's response makes clear that it is still pursuing, and believes there is evidence to support, all three ways of proving a regarded-as-disabled case. Unless any claim or sub-part is disposed of earlier in the litigation, the Court will instruct the jury on the law governing the ADA, which includes all three ways of proving a substantial limitation under a regarded-as theory of disability. *See, e.g.,* Fifth Circuit Pattern Civil Jury Instruction 11.7.1. (2009) ("A person is regarded as having such an impairment if *[he/she]*: (i) has a physical or mental impairment that does not substantially limit major life activities, but is

---

Commission. (R. Doc. 17-2 at 20) ("Moreover, the EEOC's reference to the Administrative Charge File, including RHD's position statements to the EEOC, its comments to the EEOC investigator as reflected in the administrative file, and the affidavits submitted by Defendant to the EEOC during the investigation is inappropriate and does not satisfy the requirement of Fed. R. Civ. Proc. 33(d) for the reasons previously explained.")  This is a highly specific list of documents; Defendant submitted only one Position Statement and two affidavits, it should be able to locate those documents within the file.

[17] Defendant also objects, at page 21 of its memorandum that the EEOC's Response to Interrogatory No. 7 "states that Ms. Harrison was in fact able to perform the enumerated activities (contrary to the EEOC's previous statement)."  This statement is not contrary to any previous statement.  Defendant asked if Ms. Harrison was *severely restricted* or *unable* to perform the listed major life activities.  The EEOC responded that there are no facts indicating Ms. Harrison was *unable* to perform any of the listed major life activities.

treated by Defendant as having a substantially limiting impairment; or (ii) has a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (iii) has no actual impairment at all, but is treated by Defendant as having a substantially limiting impairment."). In *Cook v. Rhode Island*, 10 F.3d 17, 22 (1st Cir. 1993), a morbid obesity Rehabilitation Act case, "[t]he trial court charged the jury that it could consider plaintiff's clam under the first and third methods" of proving defendant regarded plaintiff as disabled.[18] The First Circuit further noted:

> Although the jury did not return a special finding as to whether plaintiff actually had a cognizable impairment, or was merely regarded by [defendant] as having one, the district court, without objection, charged in the alternative; hence, plaintiff is entitled to prevail on this appeal so long as the evidence supports recovery under one of these theories. *In this instance, we believe the record comfortably justifies either finding*.

*Id.* at 23 (emphasis added).[19] The EEOC intends to develop the evidence through discovery, and to present that evidence to the jury. As recognized by the First Circuit in *Cook*, the plaintiff will not be the fact-finder and, as such, does not determine which of the three ways of showing that Defendant regarded Ms. Harrison as disabled applies here. *Id.* The EEOC expects that further discovery, particularly in the form of deposition testimony, will shed substantial light on the scope of the limitations of Ms. Harrison's major life activities, as well as on the nature of Defendant's own perceptions. Defendant will have the right to attend all of those depositions

---

[18] Because the standards under the Rehabilitation Act and the ADA "are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) (citing *Wooten v. Farmland Foods*, 58 F.3d 382, 385 n.2 (8th Cir. 1995)).

[19] The court additionally noted that "The difference between these showings is often not very great. For example, a reviewing court generally must examine much the same evidence to determine if plaintiff had an actual, but non-limiting, impairment, or if she had no impairment at all." *Id.* at 23 n.5.

and, therefore, will be automatically updated on the contours of the testimonial evidence as it evolves.

### G.    Authorizations

As noted above, the EEOC has produced documents to Defendant and continually supplemented its document production.  Defendant provided the EEOC with authorizations, presumably for the ultimate purpose of obtaining documents.  The EEOC had those authorizations executed[20] and delivered them to the entities in possession of the documents.  The gravamen of Defendant's complaint now appears to be that the EEOC sent the executed authorizations to those in control of the documents, rather than directly to Defendant.

Defendant seeks to compel authorizations that would enable it to obtain directly documents from entities including the Internal Revenue Service, Social Security Administration, and hospitals, clinics, and physicians.  The EEOC has sent releases to every medical entity Defendant has requested the EEOC send releases to, and has further continually updated Defendant on the status of those releases.  Based on these releases, the EEOC has continually supplemented its document production to Defendant, including producing almost 500 pages of medical records from Ms. Harrison's physicians and all of her hospital records that post-date her termination.[21]  By obtaining these documents and then producing them to Defendant, the EEOC has been able to review them for discoverability, and also mark all the documents as Confidential, consistent with the requirements of the Protective Order governing this action.[22]

---

[20] Because Ms. Harrison is deceased, her sister, April Duong, executed the releases on her behalf.

[21] Some of these records are arguably irrelevant to the cause of action, as a disability under the ADA is determined at the time of the alleged discriminatory act.  Nonetheless, the EEOC has not withheld from Defendant a single medical document.

[22] These steps are necessary to protect Ms. Harrison's personal information.  The EEOC notes, for example, that in Exhibit A to its Motion, Defendant has filed an un-redacted document which includes Ms. Harrison's full birth date, in violation of Federal Rule of Civil Procedure 5.2. (R.

The EEOC has also sent releases to the IRS and Social Security, and has been in regular communication with those agencies in an effort to obtain these records. Defendant has no need, however, for the full tax returns of Ms. Harrison, but is only entitled to those documents relevant to Ms. Harrison's backpay.

The EEOC's position is supported by the courts. In *Klugel v. Clough*, 252 F.R.D. 53 (D.D.C. 2008), for example, the court held that the defendant's requests for production of documents, to which the defendant had attached authorizations, was not the proper vehicle to compel a plaintiff to sign a release. *Id.* at 54-55. "The strained interpretation of Rule 34 which Defendants urge is inconsistent with the plain language of the rule." *Id. See also Becker v. Securitas Sec. Services USA, Inc.,* 06-2226, 2007 WL 677711, *3 (D. Kan. March 2, 2007) (in response to requested authorizations for medical, employment, and education records, holding that "Rule 34 contains no provision requiring a party to sign a release or authorization so that the requesting party may obtain a document directly from a non-party") (citing *Shaw v. Mgmt. & Training Corp.,* No. CIV. A. 04-2394, 2005 WL 375666, at *1 (D. Kan. Feb. 9, 2005)); *see also Clark v. Vega Wholesale Inc.,* 181 F.R.D. 470, 471 (D. Nev. 1998) ("no basis in Rule 34" for entry of an order compelling a party to sign a release form to permit the moving party to obtain the signing party's medical records); *Ayers v. Continental Casualty Co.,* 2007 WL 1960613 (N.D. W.Va. 2007) (medical records); *Neal v. Boulder*, 142 F.R.D. 325, 327 (D. Colo. 1992) (finding "no basis under Fed.R.Civ.P. 34 that would allow this Court to compel the providing of the release forms requested" because the plaintiffs did not have custody or control of the medical records.").

---

Doc. 17-3.) Additionally, because Ms. Harrison is deceased and cannot authorize any release of information, sending these Releases to Defendant would require disclosing personal, confidential information of Ms. Harrison's sisters, including their birth certificates, which the EEOC has used to establish they are Ms. Harrison's next of kin.

Even if one were to assume, *arguendo*, that Rule 34 requires the execution of a release, there is no support for Defendant's still-further-attenuated argument, namely, that the release must be given to the requesting party.[23]  In one of the cases Defendant cites, *Woodard v. Tynan*, 776 F.2d 250 (10th Cir. 1985), the Court ordered the party to obtain *its own* records and then provide them to the other side pursuant to a discovery request, exactly as the EEOC has been doing in this matter.  The fundamental premise of Rule 34 is production of documents within the producing party's control or possession.  If, by virtue of a release, the responding party gains control or possession of the subject discoverable documents, then they should be produced.  There is no logic to the notion that, apart from the underlying discoverable documents, a requesting party has an abstract right to a release, which did not exist before the litigation arose, and which itself is neither discoverable nor substantively relevant to anything.

## III.   CONCLUSION

The EEOC has cooperated with Defendant, has already provided Defendant with supplemental responses to the Interrogatories Defendant raised questions about, has provided Defendant with all facts available to it, including medical records from all of Ms. Harrison's treating physicians, and has continuously communicated with Defendant about the status of its

---

[23] In some of the cases cited by Defendant the Court ordered the Plaintiff(s) to sign a release, but these cases do not indicate that the Court ordered the party to provide the release to the Defendant.  Here, the EEOC never objected to having the authorizations signed, but rather to sending the authorizations, rather than the documents themselves, to Defendant.  Thus, *Lischka v. Tidewater Services, Inc.*, 1997 WL 27066 (E.D. La. 1997), is distinguishable.  There, the Court ordered plaintiffs to sign various authorizations, but it is not clear from the opinion whether the plaintiffs had otherwise agreed to provide the documents.  That case is further distinguishable because the court noted that the plaintiffs made no objections, such as that the scope of the discovery sought was too broad, which objection the EEOC has explicitly made here (*see* R. Doc. 17-4 at 17-18), and also noted that those plaintiffs did "not cite a single case in support of their reading of Rule 34." *Id.* at *1-2; *cf. Snyder v. Brownlow*, 1994 WL 273317, *2 (E.D. Pa. 1994) (noting that defendant "has not cited any legal authority to support his assertion").  Defendant's citation to *Woodard v. Tynan*, 776 F.2d 250 (10th Cir. 1985), actually supports the EEOC's position, as noted above.

other pending requests for information from non-parties.  The EEOC simply draws the line at providing Defendant with work product and seeks to protect the privacy and confidentiality of Ms. Harrison's documents.  The Commission therefore respectfully requests that the Court deny Defendant's Motion to Compel.

Respectfully submitted,

**P. DAVID LOPEZ**
General Counsel
No Bar Roll Number Assigned
**JAMES L. LEE**
Deputy General Counsel
No Bar Roll Number Assigned
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
No Bar Roll Number Assigned
**JIM SACHER**
Regional Attorney
La. Bar Roll Number 14888
Equal Employment Opportunity
Commission
Houston District Office
Mickey Leland Federal Building
1919 Smith Street
Houston, Texas 77002-8049
Direct Line: (713) 209-3398

/s/ Tanya L. Goldman
**GREGORY T. JUGE**
Senior Trial Attorney
La. Bar Roll No. 20890
**TANYA L. GOLDMAN**
Trial Attorney
No Bar Roll Number Assigned
**U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**
New Orleans Field Office
1555 Poydras Street
Suite 1900
New Orleans, LA  70112

Tel:    (504) 595-2878 (Main Legal #)
            (504) 595-2877 (Juge)
            (504) 595-2914 (Goldman)
Fax:    (504) 595-2886 or 589-6861
E-mail: Gregory.Juge@eeoc.gov
        Tanya.Goldman@eeoc.gov
**COUNSEL FOR PLAINTIFF,**
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on counsel of record for all parties, via email, United States mail, postage pre-paid, via facsimile transmission, via hand delivery, via E.C.F., or via next day delivery.

August 23, 2011                          /s/ Tanya L. Goldman
Date                                     **Tanya L. Goldman**