## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** **Plaintiff** | **CIVIL ACTION NO.** **10-3322** |
| **v.** | **SECTION B** **JUDGE LEMELLE** |
| **RESOURCES FOR HUMAN DEVELOPMENT, INC. D/B/A FAMILY HOUSE OF LOUISIANA** **Defendant** | **MAG. 2 (WILKINSON)** |


## EEOC'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission"), submits this Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Motion").  For the reasons set forth below, Defendant's Motion should be denied.[1]

## I.   INTRODUCTION

This is a suit under the Americans with Disabilities Act of 1990 ("ADA").  As discussed more fully below, Defendant's Motion is premature.  The discovery deadline is January 13, 2012 (more than four months away), and the expert deadline is November 14, 2011 (more than two months away).  In addition to its prematurity, Defendant's Motion is also legally and factually meritless.  First, the Charging Party exhausted her administrative remedies.  Second, Defendant is incorrect, as a matter of law, that the ADA requires a showing that a physical impairment has a "physiological" cause.  Third, Defendant is also wrong, as a matter of law, that a "regarded as" claim of discrimination requires a showing that the employer perceived a "physiological" cause to the subject impairment.  Were such a showing required, for either an actual or regarded-as disability claim, then the EEOC would be entitled to pursue the issue in discovery.  Further, there is direct evidence which shows that Defendant regarded Ms. Harrison as disabled, precluding summary judgment in Defendant's favor.[2]

## II.   FACTUAL BACKGROUND

Defendant hired Charging Party Lisa Harrison on November 23, 1999, as a Prevention/Intervention specialist.  Her job required her to oversee a day care program which cared for the children of mothers who were staying at Defendant's facility, where they were

---

[1] The EEOC also incorporates its Exhibits, Statement of Contested Facts, and Rule 56(d) Declaration.

[2] Defendant has not sought summary judgment, or made any arguments, with respect to coverage under the ADA by virtue of the charging party, Ms. Harrison, having had a "record of" a disability.  A person with a record of a disability is protected from discrimination. 42 U.S.C. § 12102(1)(B).  It is undisputed that, while she worked for Defendant, Ms. Harrison went out on short term disability leave. (*See* Pl.'s Exh. A.)  The evidence amply supports the inference that, during that time, she was completely unable to work and, therefore, more than "substantially limited" in working.  Being completely unable to work for a period of even 30 days can constitute a record a of disability. *See E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 655-56 (5th Cir. 1999).

treated for addiction.  As part of her job, Ms. Harrison cared for children and supervised other

caretakers.   Ms. Harrison worked for Defendant for almost eight years, until Defendant

terminated her on September 6, 2007.  In her Charge of Discrimination, Ms. Harrison alleged:

> I was hired by Respondent on November 23, 1999 as an Intervention Prevention
> Specialist. On September 6, 2007, I was discharged because of my weight. I was
> called into Michelle Vick's office and told that I was terminated. She said that
> Jefferson Parish (who funds the program) told her to terminate me due to my
> limited mobility.  She stated that I would have difficulty administering CPR but I
> have a CPR card and have had one for the 8 years I worked for Family House.  I
> believe that I was discriminated against in violation of the Americans with
> Disabilities Act, in that I was regarded as having a disability. I worked for this
> company for eight years and at no time during my employment has my weight
> caused me difficulty nor stopped me from performing my job. I have never had a
> write-up or supervision concerning this matter.

(R. Doc. 19-3.)

As alleged in Plaintiff's Complaint, at all times relevant, Ms. Harrison was morbidly

obese.  She was 5'2" tall and weighed over 500 pounds during her employment with Defendant.[3]

Indeed, Defendant admits that Ms. Harrison was morbidly obese, affirmatively asserting in its

motion for summary judgment that Ms. Harrison weighed more than 400 pounds when

Defendant hired her. (R. Doc. 19-1 ¶ 2.)  Ms. Harrison was also qualified and able to do her job,

and had done so for many years.   The only performance evaluation Defendant has produced,

from March 24, 2006, shows that Ms. Harrison's supervisor, Michele Vick, rated Ms. Harrison

as "excellent" in seven out of 12 areas, including "Quality of work." (Pl.'s Ex. C.)

Following her termination, Ms. Harrison filed a Charge of Discrimination with the

EEOC. (R. Doc. 19-3.)  During the investigation, Defendant submitted a Position Statement and

---

[3] Ms. Harrison's medical records indicate that during doctor's appointments in 2005 and 2006, while she worked for Defendant, Ms. Harrison weighed over 500 pounds.  At an appointment in June of 2006, three months after receiving an excellent performance evaluation, Ms. Harrison weighed 527 pounds.  One week after she was terminated, Ms. Harrison's medical records show that she also weighed 527 pounds.  (Pl.'s Ex. B.)

Responses to Requests for Information.  Defendant's Position Statement unmistakably admits

that Ms. Harrison's termination was because of her weight:

> Charging Party Lisa Harrison was hired by Family House Louisiana on November 23, 1999 as a Prevention/Intervention Specialist, to work with pre-school age children.  Although she was already heavy when hired, her physical condition did not initially, nor for several years of her employment, interfere with her ability to perform her essential job functions.  Over the years, though, she gained significant additional weight which further limited her mobility and resulted in diminished physical interaction with the children, thus diminishing her effectiveness. Most significantly, however, in May of 2007, Family House Louisiana moved from its previous site in Harvey, LA to its present location in Terrytown, LA. As described below, the physical layout of the new location required greater mobility of Ms. Harrison in order to properly do her job, and thus the shortcomings in her performance became more apparent, ultimately leading to her termination for failure to meet the requirements of her position.

(Def.'s Position Statement, R. Doc. 19-7 at 2; *see also* Pl.'s Exs. F, G.)[4]  Defendant admits that

as far as it is aware, no documents ever existed in which Defendant informed Lisa Harrison,

during her employment with Defendant, that she posed a direct threat to the health or safety of

herself or others in the workplace.[5]  (*See* Def.'s Resp. to Pl.'s Req. for Admis. 26, Ex. D).

On November 1, 2009, Ms. Harrison died.  Her cause of death is listed on her death

certificate as "morbid obesity."   The death certificate also lists hypertension, diabetes, and

congestive heart failure as other significant conditions contributing to her death. (Pl.'s Ex. E.)

The EEOC filed this suit on behalf of the estate of Ms. Harrison on September 30, 2010.

(Compl., R. Doc. 1.)  The Complaint alleges that Ms. Harrison had severe obesity, which is a

physical impairment within the meaning of the ADA, and which Defendant regarded as being an

---

[4] The EEOC disputes Defendant's unsupported assertions that Ms. Harrison gained a significant amount of weight during her employment, and is unaware of any evidence to that effect.  In fact, in Defendant's response to the EEOC's Request for Admission number 10, Defendant specifically asserted that it did not have sufficient information to address whether Ms. Harrison's weight had significantly changed: "10. During her employment with Defendant, Lisa Harrison's weight did not significantly change.  Answer: Objection. The term "significantly" is vague. Subject to this objection, and without waiving same, this request cannot be admitted or denied due to lack of sufficient information after reasonable inquiry." (*See* Pl.'s Ex. D.)

[5] Defendant contends that Ms. Harrison constituted a direct threat to the safety of others. (Def.'s Am. Answer, R. Doc. 12 at 2.)  Assertion of this affirmative defense, as to which Defendant bears the burden of proof, makes clear that, in Defendant's judgment, Ms. Harrison had a substantially limiting physical impairment.

impairment. (Compl. ¶ 10.)  The Complaint further alleges that Defendant violated Title I of the ADA by terminating Ms. Harrison's employment because of her disability. (Compl. ¶ 14.)

## III.   LEGAL STANDARDS

### A.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The moving party bears the burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey,* 504 F.3d 505, 508 (5th Cir. 2007).  The Court must construe all facts and inferences in the light most favorable to the nonmovant and cannot weigh evidence or evaluate the credibility of witnesses. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

### B.   The Motion is premature and should be denied under Fed. R. Civ. P. 56(d)

Federal Rule of Civil Procedure 56(d) is "designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'"  The Rule "is an alternative response in opposition to a motion for summary judgment which is designed to protect non-moving parties against premature summary judgment dismissals." *Khan v. Zurich Am. Ins. Co.*, 07-8115, 2008 WL 4091647, *2 (E.D. La. Aug. 27, 2008) (Lemelle, J.) (granting Rule 56(f) motion, citing *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1286 (5th Cir. 1990)).[6]

Rule 56(d) motions are "broadly favored and should be liberally granted." *Raby v. Livingston,* 600 F.3d 552, 561 (5th Cir. 2010) (internal quotation omitted).  The Rule provides

---

[6] Rule 56(f) has been recodified "without substantial change" as Rule 56(d). *Sapp v. Memorial Hermann Healthcare System*, 406 Fed. App'x 866 (5th Cir. 2010) (quoting Fed. R. Civ. P. 56(d) 2010 amend. cmt. (2010)).

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d); *see also Int'l Shortstop, Inc. v. Rally's Inc.,* 939 F.2d 1257, 1267-68 (5th Cir. 1991) ("Summary judgment is a lethal weapon. We must afford prospective victims some protective armor if we expect them to properly defend against it.").

The Rule 56(d) motion must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby*, 600 F.3d at 561 (internal quotation omitted).  "To obtain such a continuance, the party must indicate 'why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact.'" *Lang v. DirecTV, Inc.*, --- F. Supp. 2d ----, 2011 WL 2709886, *2 (E.D. La. 2011) (internal quotation omitted).

On August 16, 2011, Defendant filed a Motion for Summary Judgment. (R. Doc. 19.) Plaintiff's expert deadline is November 14, 2011. (R. Doc. 8.)  The discovery deadline is January 13, 2012. (R. Doc. 8.)  At the time Defendant filed its Motion, no depositions had yet been taken.[7]  The Scheduling Order provides for an additional five months of discovery.  Defendant's Motion seeks summary judgment on coverage under the ADA, and is therefore potentially dispositive.  Plaintiff would be unfairly prejudiced if the Court were to rule on the Motion at this premature stage.   Plaintiff attaches a declaration by undersigned counsel regarding which additional discovery Plaintiff contends will produce specific facts that are necessary and relevant to the Court's proper disposition of the summary judgment motion.  The declaration shows that the EEOC has diligently pursued discovery, and discusses the specific facts that it may obtain

---

[7] Since filing its motion, Defendant has deposed the EEOC's investigator..

through additional discovery and that are critical to the Court's ruling on summary judgment. The EEOC therefore respectfully suggests that other than perhaps ruling on Defendant's exhaustion argument, the Court should deny Defendant's motion at this time. *See* Fed. R. Civ. P. 56(d)(1) ("the court may . . . defer considering the motion or deny it").[8]

## IV.    LAW AND ARGUMENT

### A.    Ms. Harrison exhausted her administrative remedies

Ms. Harrison exhausted her administrative remedies for both an "actual" and "regarded-as" disability under the ADA.  "Prior to bringing suit in federal court for violation of the ADA, a plaintiff must comply with the ADA's administrative prerequisites, which include the timely filing of a disability discrimination charge with the EEOC.  The scope of the judicial complaint is limited to 'discrimination like or related to allegations contained in the [EEOC] charge' and the scope of the resulting EEOC investigation that would 'reasonably be expected to grow out of the charge.'" *Crawford v. Harris Cnty. Juvenile Prob. Dep't*, 31 Fed. App'x 159, *3 (5th Cir. 2001) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465-66 (5th Cir. 1970)) (internal citations omitted).  The standard is not to review the actual EEOC investigation that grew out of the charge, but that which would reasonably be expected to grow out of the charge. *See, e.g., Clark v. Kraft Foods*, 18 F.3d 1278, 1280 (5th Cir. 1994) ("the actual scope of an EEOC investigation does not determine whether a claim is exhausted").

"The scope of inquiry is not, however, limited to the exact charge brought to the EEOC." *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990).  Courts are to "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." *Price v. Sw. Bell*

---

[8] The EEOC further discusses the basis for its request for relief under Rule 56(d) within the appropriate sections of its opposition.

*Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982.).  In *Lowe v. American Eurocopter, LLC*, 10-24-A-D, 2010 WL 5232523 (N.D. Miss. Dec. 16, 2010), for example, the court held that plaintiff had exhausted her administrative remedies, even though she did not actually check the box marked "disability" on her charge, because the substance of her factual statement could result in an investigation for disability discrimination. *Id.* at *5.

Numerous district courts around the country have held that because "disability discrimination claims encompass both [actual and regarded-as] cases, it is reasonable to conclude that an EEOC charge alleging disability discrimination can be expected to encompass the various statutory means by which a plaintiff might establish such a claim." *Dyer v. Wiregrass Hospice, L.L.C.*, 532 F. Supp. 2d 933, 935-36 (M.D. Tenn. 2008) (citing cases).  For example, in *Williams v. AT&T, Inc.*, 07-0559, 2009 WL 938495 (S.D. Tex. Apr. 6, 2009), the defendant argued that the scope of plaintiff's lawsuit was limited to plaintiff's "regarded as" claim because he alleged only "regarded as" disability in his EEOC charge.  The court held that by checking the "disability" box on his EEOC charge, an EEOC investigation into a claim based on actual disability could reasonably be expected to grow out of plaintiff's charge. *Id.* at *11 n.4. *See also Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743, 748 (D. Md. 2001) (discrimination claim based on actual disability fell within scope of EEOC charge that alleged only discrimination based on perceived disability);[9] *Dikcis v. Indopco, Inc.*, 96-5526, 1997 WL 211218, *5-6 (N.D. Ill. 1997) ("[I]t would be unreasonable, in light of the other facts in the charge, to read 'perceived' to mean that [the plaintiff] did not really have a disability, or that the extent of his impairment was just a creature of [the defendant's] imagination or a function of its attitude.").

---

[9] "From these allegations, it could be reasonably expected that an EEOC investigation would discover that Plaintiff actually suffered from asthma, the asserted disability, not only that her employer *regarded* her as suffering from asthma." *Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743, 748 (D. Md. 2001).

In *Dyer*, the court cited to numerous cases holding that alleging "actual disability," in a charge was sufficient to also raise a regarded-as disabled claim in a later lawsuit:

> A review of the relevant case law reveals that the vast majority of district courts that have addressed this or substantially similar issues have reached the same conclusion, holding that the scope of an EEOC charge alleging disability discrimination extends to "regarded as" claims in addition to actual disability claims. *See, e.g., Pellack v. Thorek Hosp. & Med. Ctr.,* 9 F. Supp. 2d 984, 989 (N.D. Ill. 1998) (holding that "regarded as" claim is reasonably related to claim of discrimination on the basis of disability alleged in EEOC charge); *see also Anderson v. Foster Group,* 521 F.Supp.2d 758, 786 (N.D. Ill. 2007); *Larimer v. Int'l Bus. Machines, Corp.,* No. 02-3160, 2003 WL 21000382, *15-16 (N.D. Ill. May 1, 2003); *Schlegel v. Berks Area Reading Trans. Auth.,* No. 01-6055, 2003 WL 21652173, *4 (E.D. Pa. Jan. 9, 2003); *Sink v. Wal-Mart Stores, Inc.,* 147 F. Supp. 2d 1085, 1091-92 (D. Kan. 2001); *Ogborn v. United Food & Commercial Workers, Local No. 881 v. Powell,* No. 98-4623, 2000 WL 1409855, *7-8 (N.D. Ill. Sept. 25, 2000); *Smith v. Warren R. Gregory & Sons, Inc.,* No. IP 99-1490-C B/S, 2001 WL 1691640, *6-7 (S.D. Ind. Nov. 21, 2001); *O'Rourke v. Roadway Express, Inc.,* No. 99 C 50059, 2000 WL 1209423, *4 n.7 (N.D. Ill. Aug. 21, 2000); *Lane v. Wal-Mart Stores East, Inc.,* 69 F. Supp. 2d 749, 756 (D. Md.1999); *Baker v. Chicago Park Dist.,* No. 98 C 4613, 1999 WL 519064, *5-6 (N.D. Ill. July 16, 1999) . . . .

532 F. Supp. 2d at 936 (footnotes omitted). Thus, the "the vast majority" of cases support the EEOC's position. *Id.* (citing cases). Further, some of the courts that have held that plaintiffs have not exhausted administrative remedies did so for different reasons. For example, in *Marz* v. *Presbyterian Homes & Servs.,* 11-0200, 2011 WL 2912866, *8 n.5 (D. Minn. June 22, 2011), cited by Defendant, the Court held that the plaintiff had failed to exhaust his administrative remedies because he had changed his allegations from one based on termination to one based on failure to accommodate, as well as changing the disabilities at issue — from a mental disability to a physical one — between his charge and his lawsuit. *Id.* at *8 n.5.

On Ms. Harrison's charge, the "disability" box is checked, and the ADA is specifically cited. The EEOC charge form does not even have separate boxes for actual disability or regarded as disability. Further, although the factual narrative — typed by the EEOC, not Ms.

Harrison — states that Defendant regarded her as having a disability, in her charge Ms. Harrison did not "specifically den[y] having any actual disability," as Defendant asserts. (Def.'s Mot. Summ. J., R. Doc. 19-2 at 5.)[10]  Indeed, the narrative specifically references her weight, which is a physical impairment.  Because Ms. Harrison's EEOC charge alleges discrimination based on disability, the EEOC's actual and regarded-as disability allegations are "like or related to allegations contained in the charge." *Sanchez*, 431 F.2d at 465-66.  The courts in *Dyer* and *Williams* rejected the same arguments Defendant puts forth here, including that Ms. Harrison's failure to refer specifically to "actual disability," or to check a specific box on her intake questionnaire (in Ms. Harrison's case, she did not check "Yes, I have an actual disability") is dispositive of this issue.  But "[u]nder the governing caselaw, this factor is not determinative of the scope of the EEOC charge." *Dyer*, 532 F. Supp. 2d at 936 n.5 (citing *Dixon v. Ashcroft,* 392 F.3d 212, 217 (6th Cir. 2004)).  In order to constitute a "minimally sufficient" charge of discrimination, a Charging Party need only identify the *facts* necessary to place the employer on notice of the nature of the claim.  Given that courts are to "construe employment discrimination charges with the 'utmost liberality,'" a Charging Party cannot be required to exhaustively set forth all legal theories upon which a claim might ultimately be based by attorneys in court. Clearly, Ms. Harrison exhausted her administrative remedies. *Price*, 687 F.2d at 78.

### B.      Morbid obesity is an impairment within the meaning of the ADA.

Summary judgment on the EEOC's "actual disability" claim is also inappropriate because morbid obesity is an impairment within the meaning of the ADA.  To establish a *prima facie* violation of the ADA, Plaintiff must show that Ms. Harrison was (1) disabled within the meaning of the ADA, (2) "a qualified individual with a disability," and (3) suffered an adverse

---

[10] Defendant appears to assume that because Ms. Harrison's charge says that her weight never caused her a problem in doing her job, that this statement could not result in an investigation based on actual disability.  But in every successful ADA claim, the plaintiff must be able to perform the essential functions of her job.

employment decision because of her disability. *Hamilton v. Sw. Bell Tel. Co.,* 136 F.3d 1047, 1050 (5th Cir. 1998).  Defendant's summary judgment motion challenges solely the threshold issue of whether Ms. Harrison was actually or regarded as disabled within the meaning of the ADA, and within that threshold issue, solely the EEOC's claim that morbid obesity is an impairment.  Defendant's motion is premised on its faulty reading of the ADA to require a plaintiff to show a physiological cause for an impairment.  Nowhere does the Statute require a plaintiff to prove the cause of a disability, and the legislative history provides that the cause of a disability is irrelevant. 34 C.F.R. pt. 104 app. A.  Further, even if the Court were to hold that the EEOC must prove a physiological cause for an impairment, the Court should deny Defendant's Motion pursuant to Rule 56(d), as it is an issue of fact whether Ms. Harrison's obesity resulted from a physiological cause, and plaintiff has not yet had the opportunity to depose a single individual or present an expert report on these facts.

### 1.  The ADA does not require proof of the cause of an impairment.

A "disability" under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[11]  The regulations define "physical impairment" as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

---

[11] Contrary to Defendant's assertion that Plaintiff must choose to proceed under the theory that Ms. Harrison was actually disabled or regarded as disabled, plaintiffs can pursue one or more of the three ways of proving a disability.  Judge Wilkinson recently noted that "Fed. R. Civ. P. 8(d)(2) specifically permits alternative pleading of claims in this way." (R. Doc. 25, Order Denying Def.'s Motion to Compel.)  *See also McInnis v. Alamo Community. College District*, 207 F.3d 276, 281 (5th Cir. 2000); *U.S. E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 406 F. Supp. 2d 645, 651 (E.D. La. 2005) ("The Court explained to the jury that an employee may be disabled under the ADA in one of three ways."); 29 CFR § 1630.2(g)(2) (Regulations to the ADA Amendments Act) ("An individual may establish coverage under any one or more of these three prongs of the definition of disability").

29 C.F.R. § 1630.2(h)(1).  If an individual has an impairment, she must also prove that the impairment substantially limits a major life activity to show an actual disability.  Defendant's motion does not address this aspect of coverage, and therefore Plaintiff need not address it either.

The EEOC's Compliance Manual explicitly states that morbid obesity is an impairment: "severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment." Section 902.2(c)(5)(2).[12]  The facts already adduced show that, under this definition, Ms. Harrison was morbidly obese and, therefore had an impairment.[13]  Nevertheless, Defendant contends that morbid obesity is not an impairment unless it has a physiological cause.  The ADA does not require proof of causation for a disorder or condition to be recognized as an impairment.  Therefore there is no statutory basis for Defendant's argument.  The original source of the EEOC's implementing regulations also explicitly states that causation is irrelevant.  The regulations adopted the definition of impairment found in regulations promulgated by the Department of Education implementing Section 504 of the Rehabilitation Act. *See* 29 C.F.R. pt. 1630 app. § 1630.2(h).[14]  The appendix to these Department of Education regulations specifically provides that an impairment includes "any condition which is mental or physical *but whose precise nature is not at present known.*" 34 C.F.R. pt. 104 app. A (emphasis added).[15]  The EEOC's Compliance Manual also provides that "The cause of a condition has no

---

[12] EEOC Compliance Manual, Section 902, http://www.eeoc.gov/policy/docs/902cm.html. The Compliance Manual is entitled to "a 'measure of respect.'" *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) ("[T]he agency's policy statements, embodied in its compliance manual and internal directives, interpret not only the regulations but also the statute itself. Assuming these interpretive statements are not entitled to full *Chevron* deference, they do reflect "'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'") (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)).

[13] Defendant affirmatively contends that Ms. Harrison weighed more than 400 pounds at all times relevant.

[14] "[T]he Rehabilitation Act itself provides that '[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . .'" *E.E.O.C. v. Texas Bus Lines*, 923 F. Supp. 965, 975 n.5 (S.D. Tex. 1996).

[15] *See also* 45 C.F.R. pt. 84 app. A (same); *cf.* H.R. Rep. No. 101-485(III), at 29 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 267, 452 (the legislative history of the ADA, explaining that "[t]he cause of a disability is

effect on whether that condition is an impairment." Section 902.2(e).  In further explanation, the

manual states:

> Voluntariness is irrelevant when determining whether a condition constitutes an
> impairment.  For example, an individual who develops lung cancer as a result of
> smoking has an impairment, notwithstanding the fact that some apparently
> volitional act of the individual may have caused the impairment.

*Id.* (citations omitted).  The Sixth Circuit has further noted that the ADA:

> [C]ontains no language suggesting that its protection is linked to *how* an individual
> became impaired, or whether an individual contributed to his or her impairment.  On
> the contrary, the Act indisputably applies to numerous conditions that may be
> caused or exacerbated by voluntary conduct, such as alcoholism, AIDS, diabetes,
> cancer resulting from cigarette smoking, heart disease resulting from excess of
> various types, and the like.

*Andrews v. Ohio*, 104 F.3d 803, 809 (6th Cir. 1997) (quoting *Cook v. State of Rhode Island,*

*Dep't of Mental Health, Retardation, and Hospitals*, 10 F.3d 17, 24 (1st Cir. 1993)).  As

discussed above, the EEOC's regulations define physical impairment as "a physiological

disorder, or condition . . . ." 29 C.F.R. § 1630.2(h)(1).  The regulatory definition does not require

a known *cause*, but rather a physical *condition or physiological disorder*.  The regulations draw

the distinction between *physical* impairments and *mental* impairments, which has to do with the

nature of the condition, but nothing to with its cause. *See* 29 C.F.R. § 1630.2(h) (distinguishing a

"physiological disorder, or condition" from a "mental or psychological disorder").

Defendant's confused and erroneous argument apparently stems from a discussion within

the regulations of "physical characteristics."  The Regulations provide an exception, not

applicable here, for mere physical characteristics which are not inherently physiological

disorders, or conditions.  The Regulations provide that physical characteristics, including weight,

"that are within 'normal' range *and* are not the result of a physiological disorder" are not

---

always irrelevant to the determination of disability"); *Cook v. Rhode Island*, 10 F.3d 17, 22 (1st Cir. 1993) ("The
term also encompasses disorders and conditions 'whose precise nature is not at present known.'").

impairments. 29 C.F.R. pt. 1630 app. § 1630.2(h) (emphasis added).  The physiological disorder component applies *only* when the person is within normal range, as established by use of the conjunctive "and."  *See also* Compl. Man. § 902.2(c)(5) ("normal deviations in . . . weight . . . that are not the result of a physiological disorder are not impairments").  Thus, merely being slightly overweight — that is, within normal range — in and of itself, is generally not considered an ADA impairment, unless it is the result of a physiological disorder. *Id.*; *cf.* 29 C.F.R. pt. 1630 App. § 1630.2(j) (prior version) (noting that "except in rare circumstances, obesity is not considered a disabling impairment").[16]  As discussed, the record evidence shows beyond question that Ms. Harrison's weight was not within "normal" range.[17]

Morbid, or severe, obesity is not a physical characteristic within "normal" range.  When obesity rises to this level, it is no longer a "normal deviation" in weight and there is therefore no need to inquire into whether the obesity stems from any other type of disorder. Severe, or morbid, obesity itself *becomes* the requisite "condition" satisfying the regulatory definition of impairment.  Thus, as noted, the Compliance Manual explicitly provides that morbid obesity constitutes an impairment: "severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment." *Id.* at Section 902.2(c)(5)(2).  There is therefore

---

[16] The statement in the prior Appendix to part 1630 that "except in rare circumstances, obesity is not considered a *disabling* impairment" is not contrary to this position. 29 C.F.R. § 1630.2(g) (emphasis added).  This language means that there are some circumstances in which obesity *will* be considered an impairment.  Also, the language refers to a "*disabling* impairment."  Merely recognizing a condition, such as extreme weight, as an impairment does not automatically determine the condition is a disability.  An individual must have, have a record of, or be regarded as having an impairment that substantially limits a major life activity before the individual will have a *disabling* impairment. 42 U.S.C. § 12102(2).  Further, there is evidence that morbid obesity *is* a "rare circumstance." Christine L. Kuss, <u>Absolving a Deadly Sin: A Medical & Legal Argument for Including Obesity As A Disability Under the Americans with Disabilities Act</u>, 12 J. Contemp. Health L. & Pol'y 563 (Spring 1996) ("morbid obesity is rare").

[17] Thus it is not contrary to the EEOC's position here that in cases involving non morbidly obese plaintiffs, some courts have held that the plaintiffs did not have an impairment. *See, e.g., Tudyman v. United Airlines*, 608 F. Supp. 739, 740 (holding that plaintiff, who was 15 pounds over defendant airline's weight requirement, was not limited in any major life activities and did not have a physical impairment); *Andrews v. Ohio*, 104 F.3d at 810 (holding that 76 officers who exceeded weight limits, but with no other information about their weight, had not shown they were regarded as disabled); *Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997) (holding that firefighter who did not meet weight requirements because he was 29–59 pounds over weight limit was not disabled).

no need to additionally prove that morbid obesity is the result of a physiological disorder to classify it as an impairment.[18]

The cause of morbid obesity is just as irrelevant as the cause of other impairments within the meaning of the ADA, including AIDS, lung cancer, and heart disease. The EEOC is not aware of any cases requiring a plaintiff to show the cause of the impairment in any context other than an obesity claim. There is no Fifth Circuit case law of which the EEOC is aware requiring such a showing in any ADA case, including those involving obesity.[19] To require establishment of the underlying cause of the impairment in a morbid obesity cause, but not in any other disability cases, would epitomize the very prejudices and stereotypes which the ADA was passed to address. *See* 42 U.S.C.A. § 12101. Further, it many cases, it may be impossible — even for the world's leading scientists who dedicate their professional lives to the endeavor — to ascertain the precise cause of an impairment, including for morbid obesity.[20] *See* Elizabeth E. Theran, "Free To Be Arbitrary And . . . Capricious": Weight-Based Discrimination and the Logic of American Antidiscrimination Law, 11 Cornell J.L. & Pub. Pol'y 113, 148-49 (2001) (morbid obesity "is part of the mystery that medical researchers are currently trying to understand").

Cases that conflate morbid obesity with a "mere physical characteristic," therefore improperly contravene the ADA and its implementing regulations, which are entitled to deference. *Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). A

---

[18] Ms. Harrison's death certificate lists "morbid obesity" as a cause of death. Defendant's argument that morbid obesity is a mere physical characteristic amounts to suggesting that Ms. Harrison died from a physical characteristic rather than a substantially limiting impairment.

[19] In *EEOC v. Texas Bus Lines*, 923 F. Supp. 965 (S.D. Tex. 1996), a case within the Fifth Circuit where the Court held that the defendant employer regarded the applicant as disabled because of her obesity, there was no evidence about the cause of the applicant's obesity. "Additionally, when questioned as to whether obesity could by symptomatic of other ailments, Dr. Frierson answered yes, and stated that obesity could indicate a thyroid, ovarian, or hormonal problem. However, Dr. Frierson found no evidence of any such ailments in [the applicant] *that could have caused* the obesity." *Id.* at 978 (emphasis added).

[20] For example, this Court declined to grant summary judgment in a case involving ulcerative colitis, for which the cause is unknown. *See U.S. E.E.O.C. v. SFAILA, Inc.*, 666 F. Supp. 2d 637 (E.D. La. 2009) (Feldman, J.); Mayo Clinic website, http://www.mayoclinic.com/health/ulcerative-colitis/DS00598/DSECTION=causes ("The cause of ulcerative colitis is unknown.").

careful reading of the case law supports this position, and illustrates the ensuing confusion.  In *Andrews v. Ohio*, 104 F.3d 803 (6th Cir. 1997), for example, a group of 76 officers failed a physical examination administered to test their ability to meet a state-imposed weight and fitness standard.  They sued under the ADA, claiming that Ohio regarded them as disabled — based on their weight and fitness level — and discriminated against them because of this perceived disability.  The Sixth Circuit looked to the EEOC's regulations and interpretive guidance regarding weight-related impairments. *Andrew*s, 104 F.3d at 808.  The court explained that while weight within the normal range and not resulting from a physiological disorder was not an ADA impairment, courts have found "*morbid* obesity to be an impairment." *Id.* (citing *Cook*, 10 F.3d at 25; *Smaw v. Va. Dep't of State Police*, 862 F. Supp. 1469 (E.D. Va. 1994)).[21]  In ruling against the plaintiffs*,* the court noted that the officers suffered only from having "*physical characteristics* either being marginally above a weight limit or marginally below a fitness standard which Ohio has deemed inconsistent with the job requirements of certain law enforcement positions." *Id*.  The troopers— unlike in the case *sub judice* — had not alleged that their weight was "beyond a normal range."   Thus, the Court ruled, the officers had not successfully shown that they had a cognizable impairment. *Id.*  "That is, they have not alleged a weight or fitness status which is other than a mere, indeed possibly transitory, physical characteristic; they have not alleged a status which is the result of a physiological condition *or otherwise beyond the range of 'normal.'*" *Id.* (emphasis added).  The court made clear, by use of

---

[21] In *Smaw*, also cited by Defendant, the court's holding was not based on whether plaintiff's obesity was an impairment; rather, the court held that plaintiff had not shown that she was substantially limited in working. 862 F. Supp. at 1475 ("Even assuming that Smaw's obesity is a physical impairment, it is not the type of impairment which substantially limits her ability to pursue employment, and there is no indication that her employer perceived it as such.").  Similarly, in *Walton v. Mental Health Ass'n of S.E. Pa.*, 168 F.3d 661, 665-66 (3d Cir. 1999), the court appeared to assume, without analysis, that obesity is an ADA impairment, but held that the plaintiff did not present any evidence that defendant perceived her as substantially limited in any major life activity because of her obesity.

the disjunctive "or," that if the plaintiffs there had shown that their weight was beyond the normal range, then the physiological disorder issue would have been of no moment.

Other circuit court cases support this view, as well. In *Francis v. City of Meriden*, 129 F.3d 281, 285-88 (2d Cir. 1997), the plaintiff firefighter was between 29 and 59 pounds over the weight limits of his collective bargaining agreement. In ruling on his case, the court noted that "Generally, weight is not such an impairment." But the *Francis* court went on to explain that "a cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is *morbidly* obese *or* suffers from a weight condition that is the symptom of a physiological disorder." *Francis*, 129 F.3d at 286 (citing *Cook*, 10 F.3d at 25; 29 C.F.R. § 1630.2(h)) (emphasis added). In sum, the courts in *Andrews* and *Francis* acknowledged two permissible paths for proving a weight-related condition is an impairment within the meaning of the ADA: A plaintiff can show *either* (1) that her weight was within the normal range but caused by a physiological disorder *or* (2) that the weight was beyond the normal range.[22]

After *Andrews* and *Francis*, in *E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2006), the Sixth Circuit incorrectly held that non-physiologically caused morbid obesity is not an ADA impairment. The court conflated all weight-related conditions as "mere physical characteristics" and refused to recognize the critical distinctions between being overweight, moderately obese, and morbidly obese. Accordingly, the holding in *Watkins* conflicts with the ADA, its legislative history, and the EEOC's ADA regulations.[23] Because this is a matter of statutory construction, and given that the Fifth Circuit Court of Appeals has not decided this

---

[22] *See also Gaddis v. Oregon*, 2001 WL 1254922, *1 (9th Cir. 2001) (summarily concluding in an unpublished opinion that an appellant "suffers from morbid obesity, a disability under the [ADA]").

[23] The EEOC requested rehearing en banc in *Watkins*, arguing that the panel's opinion conflicted with the previous panel's opinion in *Andrews*. Under Fifth Circuit *stare decisis* principles, the earlier panel's opinion would be controlling. *See, e.g., Rios v. City of Del Rio, Tex*, 444 F.3d 417, 425 n.8 (5th Cir. 2006).

question, it is governed by the language of the statute and its implementing regulations, which, as amply demonstrated above, do not require proof of a physiological cause of an impairment.

> **2.   In the alternative, the Court should deny the Motion and allow Plaintiff to develop facts about the cause of Ms. Harrison's obesity.**

Defendant contends that summary judgment is appropriate at this time because the EEOC has not pleaded or proved a physiological basis for Ms. Harrison's obesity. (R. Doc. 19-2 at 18.) This is unarguably an issue of fact, and it would be premature for the Court to rule on it now. The EEOC is seeking, and expects to obtain, expert evidence regarding the nature of Ms. Harrison's obesity.  The Commission's expert report deadline is more than two months away. Under Rule 56(d), the Court should allow the EEOC time to present such medical evidence in accordance with the Scheduling Order.  If the Commission presents evidence that Ms. Harrison's obesity was the result of a physiological cause, this would prove that she had an impairment under any interpretation of the law, even those cases which the Commission contends incorrectly applied the Statute.  Such evidence will illustrate that there is, at a minimum, an issue of fact regarding whether Ms. Harrison had an impairment.

Numerous courts have recognized that similar evidence is sufficient for a plaintiff to survive summary judgment or a post-trial motion.  In *Cook*, for example, the Court held that "the jury could plausibly have found that plaintiff had a physical impairment; after all, she admittedly suffered from morbid obesity, and she presented expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems." 10 F.3d at 23.  In *Butterfield v. New York State*, 1998 WL 401533, *8 (S.D.N.Y. July 15, 1998), the court held that the plaintiff presented a triable issue as to whether his morbid obesity constituted an impairment.  The court

noted that the evidence, including physician testimony and plaintiff's medical records, provided "ample assertions that could be credited by a reasonable juror that plaintiff's obesity, whether viewed as a 'physiological disorder,' a 'condition,' or even a 'cosmetic disfigurement,' affected several 'body systems,' including musculoskeletal, respiratory, cardiovascular, and digestive."

Even the concurring Judge in *Watkins Motor Lines* noted that "morbid obesity . . . may have a physiological cause" but that the plaintiff there had presented no evidence that the charging party's morbid obesity had a physiological cause, nor had the plaintiff presented evidence that morbid obesity, "because of the nature of the disorder, always has a physiological cause." 463 F.3d at 443. *See also Greenberg v. Bellsouth Telecomm.*, 498 F.3d 1258 (11th Cir. 2007) (finding that plaintiff could establish his obesity was the result of a physiological cause); *Cordero v. Florida*, 06-529, 2007 WL 2972988, *4 (N.D. Fla. Oct. 9, 2007) (finding that plaintiff could establish a physiological cause of his obesity); *Hopkins v. General Motors*, 05-71802, 2007 WL 674327, *6 (E.D. Mich. Feb. 28, 2007) (assuming for purposes of motion that plaintiff's evidence of genetic predisposition to morbid obesity was sufficient).[24]

**C.    There are issues of fact precluding summary judgment on whether Defendant regarded Ms. Harrison as disabled; in the alternative, Defendant's Motion should be denied pursuant to Rule 56(d).**

As noted above, the EEOC can also establish a "disability" under the ADA by showing that Ms. Harrison was "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Such an impairment," refers to a physical or mental impairment. *Francis*, 129 F.3d at 286.

---

[24] Defendant seems to ask the Court to take judicial notice of the fact that it is not even *possible* that Ms. Harrison's morbid obesity may have had a kind of cause other than physiological. However, such a notion is itself a disputed question of fact. Defendant has offered no evidence, expert or otherwise, that Ms. Harrison's obesity lacked a physical cause. Similarly, Defendant has offered no evidence concerning the notion that morbid obesity never has a physical cause. Especially given the lack of any evidence whatsoever from Defendant concerning the cause of Ms. Harrison's obesity, pursuant to Rule 56(d), the Commission should be afforded the remaining two and half months to pursue expert evidence, and the remaining four and a half months to complete discovery.

> In order to be "regarded as" disabled a plaintiff must: (1) have a physical or mental impairment that does not substantially limit major life activities, but be treated as such by an employer; (2) have a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (3) have no actual impairment at all, but be treated by an employer as having a substantially limiting impairment.

*McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 281 (5th Cir. 2000); 29 C.F.R. § 1630.2(i) (prior version).  The Supreme Court has articulated the rationale for safeguarding those who are "regarded as" disabled: "Society's accumulated myths and fears about disability . . . are as handicapping as are the physical limitations that flow from actual impairment." *School Board of Nassau County v. Arline*, 480 U.S. 273, 283-84 (1987).

Defendant's motion must fail here, as well, because the EEOC does not have to prove that morbid obesity is caused by a physiological disorder, or that Defendant perceived it to be caused by a physiological disorder.  Alternatively, the EEOC must be given an opportunity to develop the relevant facts to show that Defendant regarded Ms. Harrison as having "such an impairment."  Further, the evidence already adduced in this case is the same type of direct evidence that other courts have relied on in holding that a defendant regarded a plaintiff as disabled because of her morbid obesity, further foreclosing summary judgment for defendant.

### 1. The EEOC does not need to prove that Defendant regarded Ms. Harrison's obesity as being caused by a physiological disorder.

The Fifth Circuit has never held that to prove a regarded-as case, a plaintiff must show that a defendant regarded an employee not just as being morbidly obese, but as having a physiological cause for his or her impairment.  Notably, a plaintiff does not even have to have *any impairment at all* to be regarded as disabled.  Under the regulations, if the plaintiff has no impairment, but the employer wrongly perceives her to have a substantially limiting impairment, coverage is established. 29 C.F.R. § 1630.2(i)(3).  Inherently, then, there can be no requirement

to show what the employer thought caused the perceived impairment.  The critical perception on the part of the employer is simply that the employee had an impairment that substantially limited a major life activity, not why the employee had such an impairment.

As discussed in detail above, other circuit courts of appeal have explicitly recognized that a perception that the impairment has a physical cause is *not* a requirement.  "[A] cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is *morbidly* obese *or* suffers from a weight condition that is the symptom of a physiological disorder." *Francis*, 129 F.3d at 286 (emphasis added); *see also Andrews*, 104 F.3d at 810 (holding that officers had not alleged that defendant perceived them to have an impairment because they had "not alleged a status which is the result of a physiological condition *or otherwise beyond the range of 'normal.'*") (emphasis added); *Furst v. State of New York Unified Court System*, 97-1502, 1999 WL 1021817, *4 (E.D.N.Y. Oct. 18, 1999) ("Plaintiffs have succeeded in establishing obesity as a physical impairment under the ADA only where they are morbidly obese *or* they suffer from a weight condition that is the symptom of a physiological disorder.") (emphasis added).

In the only case that the Commission is aware of to address this issue within the Fifth Circuit, the EEOC successfully proved the defendant regarded a woman as disabled because of her morbid obesity, without introducing any evidence of the cause of plaintiff's obesity. *E.E.O.C. v. Texas Bus Lines*, 923 F. Supp. 965, 979 (S.D. Tex. 1996).[25]  In that case, the charging party applied for a position with the defendant as a van driver.  Following her physical, the physician refused to qualify her, concluding that because she was morbidly obese, she would not be able to "move around swiftly in case of an accident." *Id.* at 967, 978.  In its holding, the

---

[25] The Commission disagrees with the district court's comments on "actual disability," but they are dicta, as the EEOC pursued only a regarded-as claim, as recognized by the court. *Texas Bus Lines*, 923 F. Supp. at 975.

court did not require any proof of a physiological cause for the obesity, nor any proof that defendant perceived a physiological cause for the obesity.  The physician who examined the charging party admitted he "found no evidence of any such ailments in [charging party] that could have caused the obesity." *Id.* at 978.  The court however held that the defendant "regarded [Charging Party] as disabled and, therefore, unable to work as a driver." *Id.* at 979.

In another successful regarded-as case, the plaintiff, a college professor, survived summary judgment on her claim that Defendant regarded her as having a substantially limiting impairment as a result of her obesity. *Nedder v. Rivier College*, 944 F. Supp. 111 (D. N.H. 1996). Plaintiff presented testimony about comments that defendant's employees made to her, including telling her about an article that said "traditionally students perceived overweight faculty as being less disciplined and less intelligent." *Id.* at 119.  The Court held that a trier of fact could find that defendant "perceived plaintiff's obesity as substantially limiting her ability to teach." *Id.*  The court denied the motion, without raising the issue of whether defendant regarded plaintiff's obesity as being the result of a physiological cause.  Finally, in *Cook*, the Court held that the jury could have alternatively treated the plaintiff as having a physical impairment, *even if she did not have one*.[26]  The court cited no evidence of a physiological cause of the plaintiff's obesity in reaching this holding, but rather cited evidence that would indicate she had a physiological disorder or condition that *affected* one or more bodily systems, as required by the regulations:

> On the second hand, the jury could have found that plaintiff, although not handicapped, was treated by [defendant] as if she had a physical impairment. Indeed, [defendant's] stated reasons for its refusal to hire-its concern that Cook's limited mobility impeded her ability to evacuate patients in case of an emergency, and its fear that her condition augured a heightened risk of heart disease, thereby increasing the likelihood of workers' compensation claims-show conclusively that

---

[26] It would be impossible to show the cause of a non-existent impairment.  Thus, it would be impossible to show what an employer thought the cause of a non-existent impairment was.  Defendant's contention that the EEOC must show that it believed Ms. Harrison's morbid obesity was due to a physical cause leads to absurd consequences.

[defendant] treated plaintiff's obesity as if it actually affected her musculoskeletal and cardiovascular systems.

10 F.3d at 23.

Defendant's citations are not to the contrary. As noted above, *Francis* and *Andrews* actually support the Commission's position. Additionally, a review of the other cases cited by Defendant shows that they are also inapposite. In several cases, the court's holding was determined by looking at the issue of major life activities, which is not at issue in this Motion. In *Furst*, the court held that Defendant could not show he was regarded as having a disability because he had not shown that he was substantially limited in performing the major life activity of working. 1999 WL 1021817 at *5. The same is true of the plaintiff in *Tudyman*; that court held that he had not shown that he was limited in the major life activity of working, but rather had just been excluded from one job. 608 F. Supp. at 746.[27]

The plaintiff's failure to show any actual or perceived limitation was also critical to the court's holding in *Revolinski v. Amtrak*, 08-1098, 2011 WL 2037015, *11 (E.D. Wis. May 24, 2011). On plaintiff's Rehabilitation Act claim, the court agreed that "'morbid obesity' can, in some circumstances, be a physical impairment under the Rehabilitation Act." *Id*. In dismissing plaintiff's regarded-as claim, the court held that plaintiff's claim failed because he had not produced any evidence that defendant perceived him as being substantially limited in any major life activity because of his obesity:

However, Revolinski does not point to any evidence that [defendant's employee] considered Revolinski's weight to be caused by a physiological disorder that substantially limited major life activities. In fact, Revolinski fails to cite any

---

[27] Both cases are further distinguishable because the plaintiffs *did not even allege* that they were morbidly obese. In *Tudyman*, the plaintiff exceeded the airline's weight requirement because he was "an avid body builder." 608 F. Supp. at 739, 740, 746. In *Furst*, the plaintiff did "not allege that he suffers from morbid obesity. Moreover, he admits that he has never been clinically diagnosed as obese, that he has experienced no medical problems due to his weight, and that his weight does not interfere in any way with any of his major life activities . . . ." 1999 WL 1021817 at *4 (citations omitted). These facts bear no resemblance to the matter at bar.

evidence that [defendant's employee] or others at Amtrak believed that Revolinski's weight, considered by itself, somehow limited Revolinski's ability to perform his job or perform other daily tasks.

*Id.* at *13.   Defendant has addressed only the threshold issue of whether obesity is an impairment, thus these cases are inapposite.

In addition to the case law cited above, summary judgment is further inappropriate because there is direct evidence that Defendant regarded Ms. Harrison as having an impairment, morbid obesity, which Defendant clearly perceived to substantially limit her in the major life activities of, for example, walking and working.  Where direct evidence is presented, as here, the *McDonnell Douglas* circumstantial evidence burden-shifting paradigm is inapplicable, and summary judgment is inherently foreclosed. *See e.g., Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 315-16 (5th Cir. 2004).[28]

Even though Plaintiff does not have to prove at this time that defendant regarded Ms. Harrison as substantially limited in a major life activity, such as walking or working, Plaintiff offers a few examples of such direct evidence to further illustrate why summary judgment on plaintiff's regarded-as claim would be inappropriate.[29]   In its Position Statement to the EEOC, Defendant stated, "Ms. Vick observed that Ms. Harrison's weight was clearly having an adverse impact on her ability to do her job." (R. Doc. 19-7 at 5.)  Defendant also stated that "RHD does not agree that Ms. Harrison's weight did not stop her from performing her job."  Defendant referred to Ms. Harrison's "lack of mobility." (R. Doc. 19-7 at 3.)[30]  Defendant repeatedly

---

[28] When a plaintiff produces direct evidence of unlawful motivation the employer can prevail only by proving that it would have taken the same action without the discriminatory motive. *Rachid.*, 376 F.3d at 309; *Bass v. Lifecare Holdings, Inc.*, 2000 WL 377815, *7 (E.D. La. Apr. 12, 2000) ("'A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail' in defeating defendant's summary judgment motion.").

[29] This evidence illustrates that Plaintiff's evidence is similar to the cases it cited above where plaintiffs defeated summary judgment, and distinguishable from Defendant's citations, such as those where the court held that the plaintiff had not established that defendant perceived his obesity to substantially limit a major life activity.

[30] The EEOC refers the Court to the entire Position Statement. (R. Doc. 19-7.)  Other examples include: "But as she became more obese, such interaction gradually diminished over time, as Ms. Harrison became ever more

referred to "Ms. Vick's concerns about Ms. Harrison's mobility and whether she would be able to react quickly, if the need arose, to protect the safety of the children under her care . . . ." (R. Doc. 19-7 at 5.)  Defendant further admits that "On or about December 1, 2009, Gene Schneyer, an attorney for Defendant, stated to the EEOC investigator, Ms. Alexis, that one of Defendant's supervisors had observed Ms. Harrison take 15 minutes to walk from her car to the classroom." (Def.'s Resp. to Pl.'s Req. for Admis. 67, Pl.'s Ex D.)[31]  All of these remarks inherently demonstrate that Defendant fired Ms. Harrison because it regarded her as substantially limited, *inter alia*, in walking.[32]  This Court has recognized that an employer's characterizations of an employee's walking limitations can show that it regarded her as disabled. *U.S. E.E.O.C. v. E.I. DuPont de Nemours*, 347 F. Supp. 2d 284, 291-96 (E.D. La. 2004).[33]

Defendant's reference to Ms. Harrison's "lack of mobility," is identical to the terminology the defendant used to describe the plaintiff in *Cook*, where the jury found that her employer regarded her as disabled.  The references to her weight having an adverse impact on her job could be construed by the trier of fact, as in *Nedder*, to show that Defendant regarded Ms. Harrison as substantially limited in the major life activity of working.  Finally, defendant's assumption that Ms. Harrison might not "be able to react quickly," is the exact type of evidence that showed that defendant regarded the plaintiff in *Texas Bus Lines* as disabled. 923 F. Supp. at

---

sedentary. By the time of her discharge, Ms. Harrison had gotten to the point where, once she walked from her car to the classroom in the morning, she would remain at her desk for the entire day, rarely even getting out of her chair." This shows Defendant perceived Ms. Harrison, because of her disability, to not do anything other than sit at a desk.

[31] Defendant purports to deny the request as written, yet concedes that its counsel did make the statement. Defendant wishes to escape the direct evidence by suggesting that it was intended as "hyperbole." That is a fact question and credibility issue for a jury. The undisputed fact, though, is that a manager of Defendant said it took Ms. Harrison 15 minutes to walk from her car to the classroom. This shows that Defendant regarded Ms. Harrison as substantially limited in walking, compared to the manner, duration or condition under which an average person in the general population is able to walk. Defendant admits that an average person could walk that distance in significantly fewer than 15 minutes. (Def.'s Resp. to Pl.'s Req. for Admis. 68, Pl.'s Ex. D.)

[32] For further examples of Defendant's perceptions that Ms. Harrison was substantially limited in walking and/or working, the EEOC attaches Defendant's response to an EEOC request for information as well as an Affidavit by the Terminating Official, Michele Vick. (*See, e.g.,* Pl.'s Ex. F at 3; Pl.'s Ex. G at 2, final paragraph.)

[33] The direct evidence, in the form of Defendant's remarks concerning its perceptions of Ms. Harrison, not only shows that it regarded her as disabled, but it also constitutes evidence of the existence of an actual disability.

978 (noting defendant's conclusion that charging party would not "move around swiftly in case of an accident.").   Thus, under this case law and the ADA, Plaintiff need not also show that Defendant perceived Ms. Harrison's obesity to be caused by a physiological disorder.

> **2.   Additionally, the Court should deny Defendant's Motion to allow Plaintiff to develop and present facts regarding Defendant's perceptions of Ms. Harrison's impairment.**

The EEOC would be unfairly prejudiced in opposing the Motion without having an opportunity to depose Defendant's employees and develop the facts regarding the nature of their perceptions of Ms. Harrison.   The EEOC has not yet noticed any depositions, as there are still five months remaining in discovery.   Therefore, the EEOC has not yet deposed, for example, Ms. Vick, who terminated Ms. Harrison for her "lack of mobility."   Defendant has attached affidavits from two employees who were involved in the decision to terminate Ms. Harrison. The EEOC is entitled to depose these employees and explore the statements in their affidavits. This type of evidence is critical in a regarded-as disability case.   Consistent with this Court's holding in *Khan*, "[a]dditional discovery seeking information related to the facts known to Defendant at the time of the action" is "essential" to Plaintiff's claims. 2008 WL 4091647 at *5.

## V.   CONCLUSION

For the reasons set forth above, and based on the evidence submitted with this Opposition, Defendant has not met its burden under Rule 56 to establish, through admissible evidence, the absence of any genuine disputes of material fact.   The EEOC therefore respectfully requests that the Court deny Defendant's motion.   In the alternative, the EEOC requests that the Court deny Defendant's motion on the basis of Federal Rule of Civil Procedure 56(d).   The EEOC should be given an opportunity to develop and present the facts of this case before the Court rules on a motion for summary judgment.

Respectfully submitted,


**P. DAVID LOPEZ**
General Counsel
No Bar Roll Number Assigned
**JAMES L. LEE**
Deputy General Counsel
No Bar Roll Number Assigned
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
No Bar Roll Number Assigned
**JIM SACHER**
Regional Attorney
La. Bar Roll Number 14888
Equal Employment Opportunity
Commission
Houston District Office
Mickey Leland Federal Building
1919 Smith Street
Houston, Texas 77002-8049
Direct Line: (713) 209-3398


/s/ Tanya L. Goldman
**GREGORY T. JUGE**
Senior Trial Attorney
La. Bar Roll No. 20890
**TANYA L. GOLDMAN**
Trial Attorney
No Bar Roll Number Assigned
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
New Orleans Field Office
1555 Poydras Street
Suite 1900
New Orleans, LA  70112
Tel:     (504) 595-2878 (Main Legal #)
         (504) 595-2877 (Juge)
         (504) 595-2914 (Goldman)
Fax:     (504) 595-2886 or 589-6861
E-mail: Gregory.Juge@eeoc.gov
         Tanya.Goldman@eeoc.gov
**COUNSEL FOR PLAINTIFF,**
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on counsel of record for all parties, via email, United States mail, postage pre-paid, via facsimile transmission, via hand delivery, via E.C.F., or via next day delivery.


<u>September 6, 2011</u>                          <u>/s/ Tanya L. Goldman</u>
Date                                             **Tanya L. Goldman**