UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION    *    CIVIL ACTION
   *
VERSUS    *    NO. 10-3322
   *
RESOURCES FOR HUMAN DEVELOPMENT, INC.    *
D/B/A/ FAMILY HOUSE OF LOUISIANA    *    SECTION "B"(2)

## ORDER AND REASONS

Before the Court is the Resources for Human Development, Inc.'s ("Defendant") Motion for Summary Judgment (Rec. Doc. No. 19) and Second Motion for Summary Judgment (Rec. Doc. No. 34). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that the Defendant's Motions for Summary Judgment be **DENIED**.

## PROCEDURAL HISTORY

Lisa Harrison ("Harrison") was hired by Defendant at Family House of Louisiana ("Family House"), a long-term residential treatment facility for chemically-dependant women and their children, on November 23, 1999. (Rec. Doc. No. 26 at 1). She was hired as a Prevention/Intervention Specialist and her job included overseeing a day care program for the children of mothers staying at Family House. *Id.* At the time she was hired, Harrison weighed more than 400 pounds. (Rec. Doc. No. 19-1 at 1).

On September 6, 2007, Harrison was terminated from her

position at Family House. (Rec. Doc. No. 26 at 2). At the time of her termination, she weighed 527 pounds.[1] *Id.* On October 17, 2007, Harrison filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been terminated because Defendant regarded her as disabled due to her obesity. (Rec. Doc. No. 19-1 at 2).[2]

Harrison passed away on November 1, 2009. (Rec. Doc. No. 26 at 3). On her death certificate, the official cause of death listed was "morbid obesity." (Rec. Doc. No. 26-7). Additionally, her death certificate listed hypertension, diabetes, and congestive heart failure as other "significant conditions contributing to death." *Id.*

The instant suit was filed by the EEOC on behalf of Harrison's estate on September 30, 2010. (Rec. Doc. No. 1).

---

[1]   Harrison's medical records indicate that she weighed over 500 pounds for multiple years that she worked for Defendant. (Rec. Doc. No. 2 at 2 n. 3). Specifically, in June 2006, she weighed 527 pounds. *Id.* This was just three months after receiving a performance evaluation where she was rated as "excellent" by Michele Vick in seven out of twelve areas, including "Quality of Work." *Id.* at 2. Additionally, on September 14, 2007, her medical records indicate that she weighed 527 pounds. (Rec. Doc. No. 26-4 at 2.)

[2] Specifically, Harrison denied having an actual disability and stated that she was "discriminated against in violation of the Americans with Disabilities Act (ADA), in that [she] was regarded as having a disability." (Rec. Doc. No. 19-1 at 2, citing Rec. Doc. No. 19-2).

Specifically, the EEOC alleged that Harrison had severe obesity, which is a physical impairment under the Americans with Disabilities Act ("ADA") and that Defendant regarded her as disabled because of it. *Id.* at 4. Therefore, the EEOC claims that Harrison's termination was a violation of Title I of the ADA. *Id.* at 5.

Defendant filed its Motion for Summary Judgment on August 16, 2011. Defendant filed its Second Motion for Summary Judgment on November 7, 2011.

## LAW AND ANALYSIS

**A. Standards of Review**

### 1. Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure Rule 56 at any time until thirty days after the close of all discovery. Fed. R. Civ. P. 56(b). It shall be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* 56(a). The party asserting that a fact cannot be genuinely disputed must support this by either citing to materials available in the record or showing that the materials do not establish the absence or presence of a genuine dispute. *Id.* 56(c). Summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" affirmatively show that there is no material issue of fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden is on the moving party to identify portions of the record that demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A court must construe all facts and inferences in the light most favorable to the nonmoving party. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). Additionally, when considering a motion for summary judgment, a court cannot weigh evidence or evaluate the credibility of witnesses. *Id.*

**2. Americans with Disabilities Act**

In order to prevail on an ADA claim, the EEOC must demonstrate that: (1) there is a disability within the meaning of the ADA, (2) the complaining party is a "qualified individual with a disability", and (3) the complaining party suffered an adverse employment decision because of the disability. *Hamilton v. Sw. Bell Tel. Co.,* 136 F.3d 1047, 1050 (5th Cir. 1998). The threshold inquiry is whether or not a plaintiff has a disability within the meaning of the ADA. *Id.*

Under the ADA, a disability is: "(A) a physical or mental

4

impairment that substantially limits one or more major life activities of such individual; [1] (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (2006). No entity can discriminate against a qualified individual on the basis of a disability "in regard to job application procedures, the hiring advancement, or discharge of employee." *Id.* § 12112(a). This includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." *Id.* § 12112(b)(5)(A).

For employment discrimination claims, a qualified individual under the ADA is one who "with or without reasonable accommodation, can perform the essential functions" of the job in question. 42 U.S.C. § 12111(8) (2006). Consideration should

---

[3] Under the ADA, major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (2006). Additionally, it also includes the operation of major body functions of the "immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B). Neither of these lists are exclusive.

be given to what the employer considers the essential functions of the job. *Id.* Reasonable accommodations may include:

> (A) [M]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* § 12111(9).

There is no federal law that prohibits obesity discrimination, so plaintiffs have brought claims under the ADA with varying degrees of success. Courts have disagreed on issues like whether or not an individual needs to prove an underlying physiological disorder or whether an individual's obesity causes the requisite substantial limitation of a major life activity. *See, e.g., EEOC v. Watkins*, 463 F.3d 436 (6th Cir. 2006); *Cook v. State of Rhode Island, Dept. Of Mental Health, Retardation, and Hospitals*, 10 F.3d 17 (1st Cir. 1993).

The United States Court of Appeals for the First Circuit found that a morbidly obese plaintiff can be considered disabled, and thus, entitled to protection from discrimination. *Cook*, 10 F.3d at 17. Further, the Court found that whether or

6

not obesity was an impairment under the ADA was a question for a jury. *Id.* The First Circuit specifically found that morbid obesity was a physical impairment, due to presented expert testimony that it is "a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems." *Id.* at 23.

The United States Court of Appeals for the Second Circuit refused to uphold an ADA claim for morbid obesity and found that "obesity, except in special cases where obesity relates to a physiological disorder, is not an impairment." *Francis v. City of Meriden*, 129 F.3d 281 (2nd Cir. 1997). However, the Court observed that a cause of action may exist against an employer who discriminates against an employee based on a perception that the employee is morbidly obese. *Id.* at 286. In *Francis*, the plaintiff was a firefighter who failed to meet weight guidelines proscribed for his job.[5] *Id.* at 282-83. The Second Circuit concluded that a failure to meet weight guidelines did not qualify the plaintiff for ADA protection. *Id.*

---

[4] Specifically, the City of Meriden's guidelines mandated that a firefighter's acceptable maximum weight was 188 pounds. *Francis v. City of Meriden*, 129 F.3d 281, 282-83 (2nd Cir. 1997). The plaintiff's weight wavered between 217 and 247 pounds during the period at issue. *Id.*

The United States Court of Appeals for the Sixth Circuit interpreted the ADA requirement that an impairment is "any physiological condition" to require evidence of a physiological cause of morbid obesity for an impairment to exist under the ADA. *E.E.O.C. v. Watkins*, 463 F.3d 436, 442-43 (6th Cir. 2006). In this case, the EEOC argued under a "regarded as" disabled theory and claimed that, even though the employee had an actual impairment, the impairment was erroneously regarded as an inability to perform his job. *Id.* at 440. Given that the EEOC did not present any evidence that the employee had a physiological impairment, the Sixth Circuit affirmed a summary judgment for the employer. *Id.* at 443.

### 3. Judicial Estoppel

Judicial estoppel is a "common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). It normally applies in cases when one party attempts to contravene his or her own sworn statements from earlier litigation. *Id.*

The Fifth Circuit has recognized three requirements for when the doctrine of judicial estoppel can be applied: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have

accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004)(citing *In re Coastal Plains, Inc.*, 179 F.3d 179, 205 (5th Cir. 1999)).

The Supreme Court unanimously ruled that the ADA and the Social Security Disability Insurance (SSDI) programs contained enough differences such that the doctrine of judicial estoppel could be inapplicable against an ADA claimant who had previously filed for SSDI benefits. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999). To survive a motion for summary judgment, an ADA plaintiff must explain why the claims made in an SSDI application are not inconsistent with an ADA claim that the plaintiff could "perform the essential functions" of the previous job, at least with "reasonable accommodation." *Id.* at 798.

**B. The Americans with Disabilities Act is applicable in the instant case**

**1. Severe obesity is a disability under the ADA and does not require proof of a physiological basis for it**

In order to prove that Harrison was disabled, the EEOC must show that she either had a disability or was regarded as having an impairment as defined by the ADA and its implementing regulations. *See* 29 C.F.R. § 1630.2(l); *EEOC Compliance Manual*,

Section 902. These regulations define a physical impairment as:

> [A]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine.

29 C.F.R. § 1630.2(h). Since the ADA did not specifically address obesity, it was left to the EEOC to provide guidance for employers' interpretation of the statute.

Defendant argues that the EEOC's regulations excluded obesity from qualifying as a disability. (Rec. Doc. No. 19-2). The definition of impairment does not include physical characteristics, including eye color, hair color, left-handedness, height, or weight that is within a "normal range" and is not the result of a physiological disorder. 29 C.F.R. § 1630.2(h). However, in its ADA compliance manual,[2] the EEOC states that:

> [B]eing overweight, in and of itself, is not generally an impairment . . . On the other

---

[5] The ADA's implementing regulations are entitled to deference under *Chevron, U.S.A., v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In *Chevron*, the Court held that, when a statute is "silent or ambiguous with respect to [a] specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Further, agency determinations should be "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

hand, severe obesity, which has been defined
as body weight more than 100% over the norm,
is clearly an impairment. In addition, a
person with obesity may have an underlying
or resultant physiological disorder, such as
hypertension or a thyroid disorder. A
physiological disorder is an impairment.[3]

A careful reading of the EEOC guidelines and the ADA
reveals that the requirement for a physiological cause is only
required when a charging party's weight is within the normal
range. 29 C.F.R. § 1630.2(h). However, if a charging party's
weight is outside the normal range-that is, if the charging
party is severely obese-there is no explicit requirement that
obesity be based on a physiological impairment.

At all relevant points, Harrison was severely obese; when
she was hired, she weighed in excess of 400 pounds, and when she
was terminated, she weighed in excess of 500 pounds.[7] (Rec. Doc.
No. 26 at 2-3). Additionally, there is evidence that she had
multiple resultant disorders from her obesity, including
diabetes, congestive heart failure, and hypertension. (Rec. Doc.
No. 26-7). Diabetes is covered by the ADA because it
"substantially limits the endocrine system." 29 C.F.R. § 1630.2.

---

[6]  EEOC Compliance Guidelines § 902.2(c)(5), available at
http://wwww.eeoc.gov/policy/docs/902cm.html.
[7] Harrison was five feet, two inches tall. (Rec. Doc. No. 26 at
2). The average weight for someone of that height is between 102
and 130 pounds.

Further, neither the EEOC nor the Fifth Circuit have ever required a disabled party to prove the underlying basis of their impairment. The EEOC Compliance Manual specifically provides that "[t]he cause of a condition has no effect on whether that condition is an impairment."[4] Voluntariness is also irrelevant when determining if a condition is or is not an impairment.[5] Plaintiff notes that "[t]o require establishment of the underlying cause of the impairment in a morbid obesity [case], but not in any other disability cases, would epitomize the very prejudices and stereotypes which the ADA was passed to address." (Rec. Doc. No. 26 at 15(citing 42 U.S.C. § 12101)).

In *E.E.O.C. v. Texas Bus Lines*, the EEOC proved that an employer regarded a former employee as disabled due to her morbid obesity, without introducing any direct evidence as to the cause of her obesity. 923 F. Supp. 965, 979 (S.D. Tex. 1996). In that case, the court did not require any proof that there was a physiological cause for the plaintiff's morbid

---

[7]   EEOC Compliance Guidelines § 902.2(e), available at http://wwww.eeoc.gov/policy/docs/902cm.html.

[8]   EEOC Compliance Guidelines § 902.2(e), available at http://wwww.eeoc.gov/policy/docs/902cm.html. In *Andrews v. Ohio*, the Sixth Circuit noted that the "act indisputably applies to numerous conditions that may be caused or exacerbated by voluntary conduct, such as alcoholism, AIDS, diabetes, cancer resulting from cigarette smoking, heart disease resulting from excess of various types, and the like." 104 F.3d 803, 809(6th Cir. 1997)(quoting *Cook v. State of Rhode Island*, Dep't of Mental Health, Retardation, and Hospitals, 10 F.3d 17, 24 (1st Cir. 1993)).

obesity or that the defendant perceived that the plaintiff's obesity had an underlying physiological disorder. *Id.*

Therefore, according the EEOC Guidelines to the ADA the appropriate deference, the Court should recognize that severe obesity qualifies as a disability under the ADA and that there is no requirement to prove an underlying physiological basis.

**2. Harrison was a qualified individual with a disability**

Under the ADA, one is disabled if he is actually disabled, if he has a past record of a disability, or if he is regarded as disabled by an employer. 42 U.S.C. § 12102(A)-(C) (2006). The ADA defines a qualified individual with a disability as a person who "can perform the essential functions" of his job, including those who "can only do so with reasonable accommodation." 42 U.S.C. § 12111(8). The burden of proving that one is a qualified individual with a disability is with the plaintiff. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999).

In the instant case, Harrison claimed that she was "regarded as" disabled by her employer. (Rec. Doc. No. 19-1 at 2).[6]   In their complaint, the EEOC alleged that Harrison was

---

[9] In her EEOC Charge, Harrison specifically stated that she:

> [W]as discriminated against in violation of the Americans with Disabilities Act, in that I was regarded as having a disability. I worked for this company for eight years and at no time during my employment has my weight caused me difficulty nor stopped me

disabled-in that her obesity caused her a substantial limitation in a major life activity-and that she was regarded as disabled by Defendant. Someone who is "regarded as" disabled is an "individual who has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.'" 29 C.F.R. § 1630.2(g)(1)(iii).

One of Defendant's key arguments is that Harrison never claimed to have a disability on her EEOC intake form. (Rec. Doc. No. 19-2 at 2 (citing Rec. Doc. No. 19-6 at 3)). Specifically, Harrison claimed that she had "no disability but the organization treats me as if I am disabled." (Rec. Doc. No. 19-6 at 3). However, the ADA allows for a disability to be found on three different grounds: an actual disability, a record of a physical or mental impairment, or being regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). Defendant asserts that because the complaint claimed that "Harrison was regarded as disabled," that precludes a finding that she was actually disabled. (Rec. Doc. No. 19-2 at 2). However, this is an incorrect conclusion.

When an individual is alleging that a covered entity failed

---

from performing my job. I have never had a write-up or supervision concerning this matter.
(Rec. Doc. No. 19-3).

to make reasonable accommodations in the workplace, as Harrison
did in her claim against Defendant, it is generally considered
unnecessary to allege either actual disability or a record of a
disability. *See* 29 C.F.R. 1630.2(g)(3) (2011). This is because
the evaluation of a reasonable accommodation can be made without
requiring a showing that the charging party has "an impairment
that substantially limits a major life activity or a record of
such an impairment." *Id.* However, proceeding with both a
regarded as disabled claim and an actually disabled claim is not
prohibited. *Id.* This has been supported by numerous district
courts around the country. *See, e.g., Dyer v. Wiregrass Hospice,
L.L.C.*, 532 F.Supp 933, 935-36 (M.D. Tenn. 2008)(holding that
disability discrimination claims encompass both regarded as
claims and actual disability claims); *Pellack v. Thorek Hosp. &
Med. Ctr.*, 9 F.Supp 2d 984, 989 (N.D. Ill. 1998)(holding that a
"regarded as" claim is reasonably related to discrimination on
the basis of the disability alleged in the EEOC charge).

Either way, Harrison is a qualified individual under the
auspices of the ADA. At all relevant times, she was severely
obese, which is an impairment under the ADA. (Rec. Doc. 26 at 2-
3). Additionally, she was actually disabled as a result of her
severe obesity because of the resulting diabetes and heart
problems. (Rec. Doc. No. 26-7). Michele Vick, Harrison's
supervisor at Family House, noted that her "weight was clearly

having an adverse impact on her ability to do her job." (Rec. Doc. No. 19-7 at 5). In her EEOC Intake Questionnaire, Harrison specifically stated that "Michele Vick terminated me for the reason of weight. She stated our funders Jefferson Parish said I had limited mobility." (Rec. Doc. No. 19-6 at 3).

Plaintiff bears the burden of showing whether or not Harrison was qualified, that is, that she could perform her job with reasonable accommodation. Given that she was over 400 pounds when she was fired and only began to have disabilities when Family House moved to a new location, it is not unreasonable to assume that she could have continued to perform her job with reasonable accommodation. (Rec. Doc. No. 26 at 4).

Defendant claims that, given the statements made to the EEOC that she was able to do her job and the statements made to the Social Security Administration (SSA) at the same time claiming that she was "totally disabled," Harrison cannot be found as a qualified individual with a disability. (Rec. Doc. No. 34-3 at 3-4). However, there has been no presentation of the essential functions of Harrison's job to the court. The employer has the burden of defining the essential functions of a particular position. *See, e.g.*, *Dropinski v. Douglas* County, 298 F.3d 704, 707 (8th Cir. 2002)(holding that when an employer disputes whether or not an employee can perform the essential functions of a job, the employer has the burden of demonstrating

16

what the essential functions are).

Harrison passes this threshold because she was actually disabled because of her resultant diabetes and there is sufficient evidence that supports the notion that Family House and Defendant regarded her as disabled based upon her supervisor's comments. Defendant correctly noted that "the EEOC must raise a genuine dispute with respect to whether [Defendant] perceived Lisa Harrison as having a physical or mental impairment within the meaning of the ADA." (Rec. Doc. 19-2 at 21). Since a genuine dispute has been raised, summary judgment is inappropriate on this question at this juncture.

### 3. Harrison suffered an adverse employment decision due to her disability

Liability under the regarded as prong is only established "when an individual proves that a covered entity discriminated on the basis of disability within the meaning of section 102 of the ADA." 29 C.F.R. § 1630.2(1)(3) (2011). Discrimination includes a failure to make reasonable accommodations for a disabled employee, which is at issue in the present case. *See* 42 U.S.C. § 12112 (2009); Rec. Doc. No. 1.

Harrison specifically alleges that she was fired because Family House regarded her as disabled. (Rec. Doc. No. 19-6 at 2-3). Conversely, Defendant argues that "Family House Louisiana simply determined that Ms. Harrison's obesity . . . severely

17

impaired her *job performance*" and so they were entitled to "terminate her employment without running afoul of the ADA." (Rec. Doc. No. 19-7 at 5). Whether or not Harrison actually suffered an adverse employment decision due to her morbid obesity is the key issue of material fact in the instant case. Since there is an existing question regarding this issue, summary judgment is inappropriate on this claim at the present time.

### 4. Harrison exhausted all of her administrative claims

It is well-settled that a plaintiff must exhaust all administrative remedies before an action can be brought under the ADA. *See, e.g., Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996); 42 U.S.C. § 2000e-5(f)(1). The exhaustion requirement is satisfied when plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice. *Dao*, 96 F.3d at 788-89. The Fifth Circuit has held that there is no jurisdiction for a court to consider an ADA claim when the aggrieved party has not exhausted all administrative remedies. *See, e.g., Nat'l Ass'n v. City of Public Service Board of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994).

Defendant claims that the instant suit is flawed because "plaintiff wholly failed to exhaust administrative remedies" on Harrison's EEOC claim. (Rec. Doc. No. 19-2 at 4). This turns on the fact that the EEOC is bringing a claim that Harrison was

"actually disabled" even though Harrison "failed to bring any charge relating to [that] claim." *Id.* Specifically, Defendant claims that the scope of the investigation did not extend to an actually disabled claim, that Defendant did not address this claim in its Position statement, and that the EEOC did not follow up on a claim of actual disability in its subsequent investigation. *Id.* at 6.

The scope of a lawsuit on an ADA claim is limited to the scope of the prior EEOC investigation and what can reasonably be expected to develop from an EEOC Claim. *Randel v. U.S. Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998). However, the scope is not "limited to the exact charge brought to the EEOC." *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). The Fifth Circuit has held that courts should "construe employment discrimination charges with the 'utmost liberality,'" given that most EEOC filings are not prepared by lawyers. *Price v. Sw. Bell Telephone Co.*, 687 F.2d 74, 78 (5th Cir. 1982).

Defendant argues that a claim based on actual disability cannot grow out of Harrison's original charge of a regarded as disability and so the EEOC cannot bring a claim of actual disability in the instant suit. (Rec. Doc. No. 19-2 at 7). However, the EEOC presents numerous cases that have held because "discrimination claims encompass both [actual and regarded-as] cases, it is reasonable to conclude that an EEOC charge alleging

disability discrimination can be expected to encompass the various statutory means by which a plaintiff might establish such a case." *Dyer v. Wiregrass Hospice, L.L.C.*, 532 F. Supp. 2d 933, 935-36 (M.D. Tenn. 2008); *see also Lowe v. American Eurocopter, LLC*, 10-24-A-D, 2010 WL 5232523 (N.D. Miss Dec. 16, 2010)(holding that a plaintiff had exhausted administrative remedies, even though she did not check "disability" on her EEOC charge form, because the substance of her factual statements could lead to an investigation for disability discrimination); *Williams v. AT&T, Inc.*, 07-0559, 2009 WL 938495 (S.D. Tex. Apr. 6, 2009)(holding that by checking the regarded as disabled box on an EEOC intake form, an EEOC investigation into a claim based on actual disability could reasonably be expected to grow out of the plaintiff's charge); *Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743 (D. Md. 2001)(holding that a discrimination claim based on actual disability fell within the scope of an EEOC charge that alleged discrimination based only a perceived disability).

Given that Harrison alleged that she was regarded as disabled in her EEOC intake form and that an allegation of actual disability is not outside the scope of the resulting EEOC investigation, the administrative remedies in the instant case were properly exhausted.

**C. Judicial estoppel is inapplicable in the instant case**

The Supreme Court unanimously ruled that the ADA and the Social Security Disability Insurance (SSDI) programs contained enough differences to make the doctrine of judicial estoppel inapplicable against an ADA claimant who had previously filed for SSDI benefits. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999). In *Cleveland*, the Plaintiff suffered a stroke, filed for SSDI benefits, and brought an ADA suit in which she claimed that her former employer discriminated against her due to her disability. *Id*. at 798. The Court found that there are multiple situations where an SSDI claim and an ADA claim can coexist peacefully. *Id.* at 802-03. Specifically, when the SSA determines whether an individual is disabled for SSDI purposes, it does not "take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation."[7] *Id.* at 803. There is a possibility, therefore, that "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may

---

[10] The Social Security Act defines disability differently from the ADA; under this Act, an individual is disabled if there is "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1) (2006). For the purposes of the Act, a physical impairment is one that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(2)(C)(3).

well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Id.* When a Court is faced with apparent inconsistencies between a plaintiff's earlier sworn statements, the Court should "require an explanation of any apparent inconsistency with the necessary elements of an ADA claim." *Id.* at 807. Specifically, to overcome a motion for summary judgment, the plaintiff's explanation must warrant a reasonable juror's good faith conclusion that a plaintiff could, barring the SSDI disability, "perform the essential functions" of his job, with or without "reasonable accommodation." *Id.*

The Fifth Circuit has applied *Cleveland* to ADA disability claims in two situations. *See Giles v. Gen. Elec. Co.*, 245 F.3d 474 (5th Cir. 2001); *see also Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477 (5th Cir. 2000). In *Giles*, the Court found that the plaintiff was not judicially estopped from an ADA claim because in his application for SSDI benefits, there were "no specific assertions resisting his explanation that he could perform his job with reasonable accommodation." 245 F.3d at 485. Conversely, in *Reed*, the Court held that a plaintiff who received Social Security benefits was judicially estopped when "she made specific, factual statements to the SSA that were fundamentally inconsistent with her ability to do her job, with or without accommodation." 218 F.3d at 480. Specifically in

*Reed*, the plaintiff claimed she could not sit for an extended period of time and the job was to be a helicopter pilot. *Id.*

Defendant argues that the facts in this case are analogous to those in *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457 (5th Cir. 2005). In *McClaren*, the plaintiff sued his former employer, alleging that he was discriminated against based on his age. 420 F.3d at 458. The district court held that "McClaren was estopped from making a prima facie claim [in the context of a state law age discrimination claim] and granted Morrison's motion for judgment as a matter of law." *Id.* at 461. The Fifth Circuit applied *Cleveland* and agreed that McClaren was "entitled to proffer an explanation for this inconsistency" between his EEOC charges and SSDI application. *Id.* at 464. Ultimately, the Fifth Circuit found that McClaren could not explain his inconsistent statements, and so he could not make a prima facie case for age discrimination. *Id.* at 465-66.[8]

In *McClaren*, the Fifth Circuit observed that the "compelling distinction underlying the different outcomes . . . is the type of averments made by the plaintiffs to the SSA." 420 F.3d at 466. They held that "estoppel will apply in those cases,

---

[11] The Fifth Circuit was troubled by the fact that McClaren made "signed representations to the SSA that as of June 6, 2000, he was totally disabled, unable to work, and that his disability was characterized by multiple broad systems of impairment." *McClaren*, 420 F.2d at 466. They held that, after that statement, he was "judicially estopped from showing he was qualified for the position he was subsequently denied on June 8, 2000." *Id.*

like *Reed*, where the plaintiff's factual descriptions supporting disability preclude the possibility of qualification as of a certain date." *Id.*

Following Supreme Court and Fifth Circuit precedent, this Court must consider the substance of the statements made by Harrison in her EEOC claim and in her SSDI application. On her EEOC intake form, Harrison specifically claimed that she had "no disability but the organization treats me as if I am disabled." (Rec. Doc. No. 19-6 at 3). However, in an application to the SSA for SSDI benefits made four days before the EEOC claim, Harrison affirmatively stated that "I am disabled" and "I became unable to work because of my disabling condition on September 6, 2007," which was the day of her termination. (Rec. Doc. No. 34-6 at SSA 182, 188). Specifically, she claimed that her inability "began to interfere with her ability to work in 2002."[9] (Rec. Doc. No. 34-3 at 4). However, she was able to work from 2002 to 2007 without complaint from her employer and her weight was consistently at the same level. Under *Cleveland*, the Plaintiff should be given an opportunity to explain the contradictory positions.

Further, the EEOC notes that they cannot be judicially

---

[12] At a physical examination November 3, 2007, the doctor concluded that he believed Harrison was "unable to walk, and/or stand for a full workday, life/carry objects without limitations." (Rec. Doc. No. 34-6 at SSA 87).

24

estopped from pursuing this particular claim because the "pursuit of victim-specific relief is not derivative of any cause of action of Ms. Harrison, who is not a party to this lawsuit." (Rec. Doc. No. 35 at 2). Since judicial estoppel only applies to a party deliberately changing their earlier positions, it is inapplicable against the EEOC in the instant case. (Rec. Doc. No. 35 at 10). Since the EEOC was not a party to the statements made by Harrison to the SSA, judicial estoppel should not preclude it from pursuing this action. The Supreme Court has held that when the EEOC files suit on behalf on a charging party, they are "not merely a proxy for the victims of discrimination," and so they cannot be estopped by the actions of an individual charging party. *See General Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 326 (1980).

The EEOC cannot be judicially estopped by Harrison's statements. Moreover, it should be given the opportunity to clarify the contradictory statements, and as such, summary judgment is inappropriate on this issue.

## D. There is a genuine issue of fact that should be presented before a jury

The overall issue in the instant case is why Harrison was terminated from Family House: was it because she was regarded as disabled? Or was it because her obesity severely impaired her job performance? Defendant argues that her weight limited her

job performance and that was the reason for her termination. (Rec. Doc. No. 19-7 at 5). Conversely, Plaintiff asserts she was discriminated against due to a perceived disability and that Family House failed to make "reasonable accommodations," as required by the ADA. *Id.* Since there is a genuine issue of material fact, summary judgment is inappropriate at this juncture.

Given that Defendant's motions were premature, that this case falls within the auspices of the ADA, that judicial estoppel is inapplicable, and that there is a genuine issue of material fact, **IT IS ORDERED** that Defendant's Motion for Summary Judgment and it's Second Motion for Summary Judgment are **DENIED**.

New Orleans, Louisiana this 6th day of December, 2011.

 

_____

UNITED STATES DISTRICT JUDGE